# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

LUTHER SEAY a.k.a.
LUTHER D. SEAY, JR.,

          Plaintiff,

    v.

                                      5:24-CV-1468
                                      (BKS/MJK)

KENNETH M. CHRISTOPHER,
WILLIAM J. FITZPATRICK,
HON. JUDGE DOHERTY, and
ANN USBORNE

          Defendants.

---

LUTHER D. SEAY, JR., Plaintiff, pro se

MITHCELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE BRENDA K. SANNES, Chief United States District Judge

## ORDER and REPORT-RECOMMENDATION

      Plaintiff commenced this action on December 4, 2024, by filing a complaint together with an application to proceed *in forma pauperis*. ("IFP). (Dkt. Nos. 1, 2). On November 22, 2024, Chief United States District Court Judge Brenda K. Sannes administratively closed this matter because plaintiff failed to pay the appropriate filing fee. (Dkt. No. 3). On December 6, 2024, plaintiff filed an amended complaint (Dkt. No. 4) but failed to pay the filing fee or submit a completed and signed IFP application. On December 17, 2024, plaintiff filed a second amended complaint (Dkt. No. 5) together

with a properly completed IFP application (Dkt. No. 6). On December 26, 2024, plaintiff filed a third amended complaint. (Dkt. No. 10). On January 2, 2025, plaintiff filed a fourth amended complaint ("Fourth Amended Complaint"). (Dkt. No. 11). The Clerk has sent to the court for review plaintiff's Fourth Amended Complaint, together with his application to proceed *in forma pauperis* ("IFP") (Dkt. Nos. 6, 11).

## I.    <u>IFP Application</u>

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 6). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *See Neitzke*, 490 U.S. at 327; *see also Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the

2

adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).  The court will now turn to a consideration of plaintiff's complaint under the above standards.

## II.    <u>Complaint</u>

Plaintiff's Fourth Amended Complaint purports to allege claims arising under 42 U.S.C. § 1983 against Onondaga County District Attorney William Fitzpatrick, Syracuse City Court Judge Doherty, assigned trial counsel Kenneth Christopher, and Ann Usborne (In-House ACP Mitigation Specialist) concerning their involvement in an unrelated criminal action commenced against plaintiff. Given who the defendants are and the immunity that three of them are afforded, the court does not feel compelled to provide a lengthy recitation of the operative facts alleged by plaintiff. Simply stated, the Fourth Amended Complaint alleges claims predicated on violations of plaintiff's Fifth, Sixth, and Fourteenth Amendment rights.

## III.    <u>Judge Doherty</u>

Syracuse City Court Judge Doherty is immune from suit and the Fourth Amended Complaint must therefore be dismissed with prejudice. The Second Circuit has ruled that "the New York State Unified Court System is unquestionably an arm of the State, and is entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Similarly, judges within the New York State Unified Court System are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity. *See Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y. 2014) (dismissing claim against a Delaware County judge on sovereign immunity grounds). Accordingly, plaintiff cannot maintain his claims against Judge Doherty in her official

capacity and the Fourth Amended Complaint should be dismissed with prejudice and without leave to amend.

The Fourth Amended Complaint against Judge Doherty, to the extent it alleges any claims in her personal capacity, is subject to dismissal on judicial immunity grounds. *See McNair v. Utica Police Dep't,* 6:23-CV-699 (DNH/ATB), 2023 WL 4935993, at *3 (N.D.N.Y. June 26, 2023), *report and recommendation adopted*, No. 6:23-CV-699, 2023 WL 4931609 (N.D.N.Y. Aug. 1, 2023). It is well settled that judges have absolutely immunity for their judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *see also Shtrauch v. Dowd*, 651 F. App'x 72, 73-74 (2d Cir. 2016) ("Generally, 'acts arising out of, or related to, individual cases before the judge are considered judicial in nature'") (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." *Coon v. Merola*, No. 1:19-CV-394 (DNH/ATB), 2019 WL 1981416, at *3 (N.D.N.Y. Apr. 8, 2019) (citing *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12, (1976))), *report and recommendation adopted*, 2019 WL 1978595 (N.D.N.Y. May 3, 2019).

"The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.'" *Id*. (quoting *Mireles*, 502 U.S. at 11-12). Here, plaintiff fails to plausibly allege that Judge

5

Doherty was acting outside of her judicial capacity or in the absence of jurisdiction. The

Fourth amended complaint should therefore be dismissed against Judge Doherty in her

individual capacity with prejudice and without leave to amend.

## IV.    District Attorney William Fitzpatrick

The court recommends that the Fourth Amended Complaint be dismissed with

prejudice and without leave to amend as against district attorney ("DA") William

Fitzpatrick. The doctrine of absolute immunity applies broadly to shield a prosecutor

from liability for money damages in a § 1983 lawsuit, even when the result may be that

a wronged plaintiff is left without an immediate remedy. *See Anilao v. Spota*, 27 F.4th

855, 863-64 (2d Cir. 2022) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976)). In

*Anilao*, the Second Circuit explained:

> Our cases make clear that prosecutors enjoy "absolute immunity from §
> 1983 liability for those prosecutorial activities intimately associated
> with the judicial phase of the criminal process." *Barr v. Abrams*, 810
> F.2d 358, 361 (2d Cir. 1987)(quotation marks omitted). The immunity
> covers "virtually all acts, regardless of motivation, associated with [the
> prosecutor's] function as an advocate." *Hill v. City of New York*, 45
> F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d
> Cir. 1994)). For example, a prosecutor enjoys absolute immunity when
> determining which offenses to charge, initiating a prosecution,
> presenting a case to a grand jury, and preparing for trial. *See id*.; *Imbler*,
> 424 U.S. at 431, 96 S. Ct. 984 (concluding that a prosecutor is
> absolutely immune from a § 1983 suit for damages based on his
> "initiating a prosecution and . . . presenting the State's case"). For that
> reason, we have held that absolute immunity extends even to a
> prosecutor who "conspir[es] to present false evidence at a criminal trial.
> The fact that such a conspiracy is certainly not something that is
> properly within the role of a prosecutor is immaterial, because the

6

immunity attaches to his function, not to the manner in which he
performed it." *Dory*, 25 F.3d at 83 (cleaned up).

*Id.* at 864; *see also Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d

Cir.1995) (holding that absolute prosecutorial immunity protects a prosecutor

for advocacy in connection with a bail application).

"By contrast, prosecutors receive only qualified immunity when performing

'administrative duties and those investigatory functions that do not relate to an

advocate's preparation for the initiation of a prosecution or for judicial proceedings.'"

*Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) (quoting *Buckley v.*

*Fitzsimmons*, 509 U.S. 259, 273 (1993)). "Investigation, arrest, and detention have

historically and by precedent been regarded as the work of police, not prosecutors, and

they do not become prosecutorial functions merely because a prosecutor has chosen to

participate." *Id*. (interior quotation marks and citations omitted); *see Giraldo v.*

*Kessler*, 694 F.3d 161, 166 (2d Cir. 2012) ("'[A]ctions taken as an investigator enjoy

only qualified immunity.'") (quoting *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir.

2000)). "Under a functional approach, actions are not shielded by absolute immunity

merely because they are performed by a prosecutor. 'A prosecutor's administrative

duties and those investigatory functions that do not relate to an advocate's preparation

for the initiation of a prosecution or for judicial proceedings are not entitled to

absolute immunity.'" *Giraldo*, 694 F.3d at 166 (quoting *Buckley*, 509 U.S. at 273).

There are no allegations in the Fourth Amended Complaint that DA Fitzpatrick

engaged in any activities that would fall outside the framework of absolute immunity.

7

The Fourth Amended Complaint should therefore be dismissed with prejudice as against DA Fitzpatrick without leave to amend.

## V.    **Kenneth M. Christopher**

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors and are therefore not usually liable under § 1983. *See Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties …") (internal quotation marks and citation omitted).

With respect to defendant Kenneth Christopher, who appears to have been plaintiff's defense attorney in the relevant criminal proceeding until recently replaced by attorney Mike Kasmarek, "it is axiomatic that a 'public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'" *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *7 (E.D.N.Y. Sept. 23, 2008) (citing, inter alia, *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("it is well-established that court-appointed attorneys

performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983")); *see also Benjamin v. Branden*, No. 21-CV-4927, 2022 WL 1092681, at *2 (E.D.N.Y. Apr. 12, 2022) (collecting cases). It is also axiomatic that retained counsel is not a state actor. *See Polk County v. Dodson,* 454 U.S. 312, 318-19 (1981). "Section 1983 'was enacted to redress civil rights violations by persons acting under color of State law' and should not be used by clients disappointed with the performance of their attorneys." *Brooks v. New York State Supreme Court*, No. 02-CV-4183, 2002 WL 31528632, at *3 (E.D.N.Y. Aug. 16, 2002) (citation omitted).

Accordingly, the court recommends that the Fourth Amended Complaint as against Kenneth Christopher be dismissed with prejudice and without leave to amend.

## VI.  <u>Ann Usborne</u>

"It is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motor, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) (citations omitted).

Plaintiff's Fourth Amended Complaint falls short of the requisite pleading requirement and does not allege that Ms. Usborne deprived him of a constitutional right. Rather, plaintiff alleges that Ms. Usborne acted in concert with DA Fitzpatrick, Kenneth Christopher and Judge Doherty to "recharge" plaintiff for murder (Fourth Amended Compl., pg. 14), that she "refused to provide a business card" to him, that

9

Ms. Usborne "'false promised' the removal of Kenneth M. Christopher" (Fourth Amended Compl., pg. 15), and that she is "allowing" Kenneth Christopher to remain as "assigned trial counsel." (*Id.*). The court therefore recommends that the Fourth Amended Complaint be dismissed as to Ann Usborne without prejudice and with leave to amend.

## VI.   <u>Opportunity to Amend</u>

Generally, before the court dismisses a pro se complaint or any part of the complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Based on plaintiff's claims, and more specifically, who the defendants are, this court does not find that there is any way plaintiff could amend his allegations to cure the defects in his Fourth Amended Complaint which would allow him to sue DA Fitzpatrick, Judge Doherty or Kenneth Christopher. The court therefore recommends dismissal of the Fourth Amended Complaint against these individuals with prejudice and without leave to amend. The court will, however, recommend that plaintiff be granted leave to amend his pleading with respect to Ann Usborne.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion to proceed IFP (Dkt. No. 6) be

**GRANTED**[1], and it is further

**RECOMMENDED**, that the District Court **DISMISS PLAINTIFF'S**

**FOURTH AMENDED COMPLAINT WITH PREJUDICE** against District

Attorney William Fitzpatrick, Judge Mary Anne Doherty, and Kenneth M. Christopher[2]

for failure to state a claim, and it is further

**RECOMMENDED**, that the District Court **DISMISS PLAINTIFF'S**

**FOURTH AMENDED COMPLAINT WITHOUT PREJUDICE** against Ann

Usborne with leave to amend, and it is further

**RECOMMENDED**, that if the District Judge adopts this Order and Report-

Recommendation, plaintiff be given thirty (30) days from the date of the District

Judge's order, within which to submit a proposed amended complaint to the court for its

consideration, and that plaintiff be advised that **any amended pleading must be a**

**COMPLETE PLEADING, WHICH WILL SUPERCEDE THE FOURTH**

---

[1] The court notes that although plaintiff's IFP application has been granted, plaintiff will still be required to pay fees that she may incur in the future regarding this action, including but not limited to copying and/or witness fees.

[2] Generally, when a district court dismisses a pro se action *sua sponte*, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011).

**AMENDED COMPLAINT**, and that plaintiff must include all the remaining facts and causes of action in the amended complaint. **No facts or claims from the Fourth Amended Complaint may be incorporated by reference**, and it is

      **RECOMMENDED,** that if the District Court adopts this Order and Report-Recommendation, and plaintiff files a proposed amended complaint, the proposed pleading be returned to me for review, and it is

      **ORDERED**, that while plaintiff may file objections to this Order and Report-Recommendation, before plaintiff submits any amended pleading, he should wait for the District Court to rule on the above Orders and Recommendations, and it is further

      **ORDERED**, that plaintiff's December 19, 2024 letter request (Dkt. No. 9) requesting a blank IFP form and inmate authorization form be deemed moot, and it is further

      **ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.[3]

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

---

[3] The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: January 6, 2025

Mitchell J. Katz
U.S. Magistrate Judge

2023 WL 4935993
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Brandon T. MCNAIR, Plaintiff,
v.
UTICA POLICE DEPARTMENT, et al., Defendants.

6:23-CV-699 (DNH/ATB)
|
Signed June 26, 2023

**Attorneys and Law Firms**

BRANDON T. McNAIR, Plaintiff, pro se.

### ORDER and REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court for review a pro se complaint filed by plaintiff Brandon T. McNair, in which he has sued various defendants based on several civil rights claims pursuant to 42 U.S.C. § 1983. (Dkt. No. 1) ("Compl."). Plaintiff has also moved to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

#### I. IFP Application

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application and supporting documents, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at \*2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that " 'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)). The court will now turn to a consideration of plaintiff's complaint under the above standards.

#### II. Complaint

**\*2** Plaintiff alleges that on July 27, 2021 at approximately 10:00 a.m., he was on the "east side" of Utica, New York when the "cops hopped out [and] detained [him and] tried to search [him.]" (Compl. at 4). He further alleges that, based off a general description, the police searched plaintiff because he was "black in a certain area where a man with a gun had been alleged to be there." (*Id.*). Plaintiff was arrested after "running for [his] life in an attempt to keep [the police] from violating [his] rights." (*Id.*). Plaintiff was "thrown in jail" and charged

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)

2023 WL 4935993

Case 5:24-cv-01468-BKS-MJK    Document 12    Filed 01/06/25    Page 15 of 45

with "possession of an instrument that was found almost an hour after, under some car in the parking lot of a car shop." (*Id.* at 7).

Plaintiff then states that he appeared at a bail hearing in Oneida County Court, with the defendants District Attorney ("DA") McNamara and Judge Michael L. Dwyer. (Compl. at 7). Plaintiff alleges that when Judge Dwyer learned of plaintiff's intention to post bail, he "then raised it in a clear attempt to make it unreachable post bail reform[.]" (*Id.*). Plaintiff states that he was "denied audience with the Supreme Court and [his] habeas corpus was illegally unheard," having been put "right back in front of [Judge] Dwyer for him to answer[.]" (*Id.*). Plaintiff claims that this is "not how the process works," and that Judge Dwyer "didn't have the authority to answer [his] habeas corpus." (*Id.*).

Plaintiff further alleges that Judge Dwyer and DA McNamara proceeded to "violate [his] rights in every court proceeding leading up to trial." (Compl. at 7). Plaintiff cites to a decision from the Fourth Department relative to his criminal case for the underlying facts surrounding his claims. According to *Matter of McNair v. McNamara*, plaintiff's jury trial commenced on November 1, 2021, at which time a jury was selected and sworn, and three witnesses testified. 206 A.D. 3d 1689, 1690 (4th Dep't 2022). November 2nd was a holiday, during which the trial was recessed. (*Id.*). On November 3rd, Judge Dwyer's secretary notified plaintiff's counsel that the Judge had a cold, wanted to make sure it was not COVID-19, he would not be in that day, and the jury would be sent home. (*Id.*). Plaintiff's counsel was notified several days later that the matter would be scheduled for a retrial on November 15th. (*Id.*). Essentially, the Judge believed a mistrial was necessary because it was "physically impossible" for him to come to court and proceed with the trial, while he waited three to five days for the result of his COVID-19 test. (*Id.*). Over plaintiff's counsel's objections, the mistrial was declared as of November 3rd. (*Id.*). The Fourth Department ultimately agreed with plaintiff in concluding that there was no "manifest necessity" for the mistrial, and that the county court abused its discretion in granting the mistrial sua sponte. (*Id.* at 1690-92). Accordingly, the government was prohibited from retrying plaintiff on the underlying indictment based on double jeopardy grounds. Liberally construed, this court interprets plaintiff's claims of constitutional violations in the instant complaint to relate to the underlying trial proceedings as described in *Matter of McNair*. Plaintiff also alleges that the police were "selective [and] omitted certain facts to

allow the proceedings to continue," and that DA McNamara "also did not reveal certain facts in order to secure an indictment." (Compl. at 7).

Plaintiff alleges damages including mental and physical injuries sustained during his incarceration. (Compl. at 5). He seeks monetary damages in the amount of twenty million dollars, as well as "punitive damages of relieving the officials of their official capacities." (*Id.*).

## DISCUSSION

### III. Sovereign and Judicial Immunities

**\*3** The complaint must be dismissed as against named defendants Oneida County Courts and Officials and Judge Dwyer, because they are immune from suit. The Second Circuit has ruled that "the New York State Unified Court System is unquestionably an arm of the State, and is entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Because the Oneida County Court is a part of the New York State Unified Court System, it is entitled to sovereign immunity. Similarly, judges within the New York State Unified Court System are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity. *See Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y. 2014) (dismissing claim against a Delaware County judge on sovereign immunity grounds). As both the Oneida County Court and Judge Dwyer are arms of the State, they are entitled to Eleventh Amendment immunity, and it is recommended that the complaint against them be dismissed with prejudice.

The complaint against Judge Dwyer in his personal capacity is subject to dismissal on judicial immunity grounds. *See, e.g., Washington v. Ciccone*, No. 3:21-CV-0564 (MAD/ML), 2021 WL 2935950, at \*4 (N.D.N.Y. July 13, 2021) (Judicial immunity "shields judges from suit to the extent they are sued in their individual capacities[.]"), *report and recommendation adopted*, 2021 WL 4859663 (N.D.N.Y. Oct. 19, 2021). It is well settled that judges have absolutely immunity for their judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Forrester v. White*, 484 U.S. 219, 225 (1988); *Shtrauch v. Dowd*, 651 F. App'x 72, 73-74 (2d Cir. 2016) ("Generally, 'acts arising out of, or related to, individual cases before the judge are considered judicial in nature' ") (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)); *Kim v. Saccento*, No. 21-2865, 2022 WL 9583756, at \*2 (2d Cir. Oct. 17, 2022), *cert. denied*, No.

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)

2023 WL 4935993

22-732, 2023 WL 2959393 (U.S. Apr. 17, 2023) ("the actions that [plaintiff] complains of – adverse decisions in a criminal proceeding – are plainly judicial in nature"); *Root v. Liston*, 444 F.3d 127, 132 (2d Cir. 2006) (judges who set bail enjoy absolute immunity) (collecting cases). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." *Coon v. Merola*, No. 1:19-CV-394 (DNH/ATB), 2019 WL 1981416, at *3 (N.D.N.Y. Apr. 8, 2019) (citing *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976)), *report and recommendation adopted*, 2019 WL 1978595 (N.D.N.Y. May 3, 2019).

"The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " *Id.* (quoting *Mireles*, 502 U.S. at 11-12). Here, plaintiff has failed to plausibly allege that Judge Dwyer was acting outside of his judicial capacity or in the absence of jurisdiction. To the extent that plaintiff alleges that his habeas corpus petition was not properly before Judge Dwyer, Article 70 of the New York Civil Practice Law and Rules specifically authorizes a petition for the writ to be made to a county judge being or residing within the county in which the petitioner is detained. N.Y. C.P.L.R. § 7002(b)(4). In the absence of any other allegation suggesting that the general rule regarding judicial immunity can be overcome, the court recommends dismissing with prejudice the complaint as against Judge Dwyer in his individual capacity. *See Edwardsen v. Aloi*, No. 5:17-CV-00202 (LEK/TWD), 2017 WL 1283496, at *3 (N.D.N.Y. Mar. 3, 2017) (recommending dismissal with prejudice on judicial immunity grounds), *report and recommendation adopted*, 2017 WL 1283763 (N.D.N.Y. Apr. 5, 2017).

Plaintiff has also included unidentified "officials" of the Oneida County Court as defendants in the caption of his complaint. There is, however, no specific allegation anywhere in the complaint referencing any other court official who was involved in the alleged violations of plaintiff's constitutional rights. In any event, even if plaintiff had identified another court "official" as a defendant, judicial immunity has been extended to " 'certain others who perform functions closely associated with the judicial process.' " *Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 288 (W.D.N.Y. 2019) (quoting inter alia *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). Quasi-judicial immunity is absolute if the official's role "is 'functionally comparable' to that of a judge." *Butz v. Economou*, 438 U.S. 478,

513 (1978); *see Cleavinger*, 474 U.S. at 201 ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotation marks and citation omitted)); *Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009) ("Judicial and quasi-judicial immunity are both absolute immunities." (citations omitted)). Much like judicial immunity, "[a] defendant entitled to quasi-judicial immunity loses that privilege only if [he or] she acts in the clear absence of all jurisdiction." *Finn v. Anderson*, 592 F. App'x 16, 19 (2d Cir. 2014) (internal quotation marks and citation omitted). Thus, it is likely that the unidentified court official defendants would also be protected from suit based on the doctrine of quasi-judicial immunity.

## IV. Prosecutorial Immunity

**\*4** The complaint is also subject to dismissal as against DA McNamara. The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy." *Anilao v. Spota*, 27 F.4th 855, 863-64 (2d Cir. 2022) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976)). In *Anilao*, the Second Circuit explained:

Our cases make clear that prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)(quotation marks omitted). The immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). For example, a prosecutor enjoys absolute immunity when determining which offenses to charge, initiating a prosecution, presenting a case to a grand jury, and preparing for trial. *See id.*; *Imbler*, 424 U.S. at 431, 96 S. Ct. 984 (concluding that a prosecutor is absolutely immune from a § 1983 suit for damages based on his "initiating a prosecution and ... presenting the State's case"). For that reason, we have held that absolute immunity extends even to a prosecutor who "conspir[es] to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." *Dory*, 25 F.3d at 83 (cleaned up).

*Id.* at 864. *See also Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) (holding that absolute prosecutorial immunity protects a prosecutor for advocacy in connection with a bail application).

"By contrast, prosecutors receive only qualified immunity when performing 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.' " *Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). "Investigation, arrest, and detention have historically and by precedent been regarded as the work of police, not prosecutors, and they do not become prosecutorial functions merely because a prosecutor has chosen to participate." *Id.* (interior quotation marks and citations omitted); *see Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012) (" '[A]ctions taken as an investigator enjoy only qualified immunity.' ") (quoting *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000)). "Under a functional approach, actions are not shielded by absolute immunity merely because they are performed by a prosecutor. 'A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.' " *Giraldo*, 694 F.3d at 166 (quoting *Buckley*, 509 U.S. at 273).

Liberally construed, in this case plaintiff alleges that DA McNamara violated his rights by "hold[ing] plaintiff in an attempt to retry [him] illegally for 7 months" after the mistrial (Compl. at 7), and for failing to "reveal certain facts in order to secure an indictment" (*id.*). Otherwise, plaintiff generally alleges that DA McNamara violated his rights "in every court proceeding leading up to trial[,] "in the trial [and] after the first trial[.]" (*Id.*). With respect to the indictment, the courts have long held that a prosecutor's determination to bring charges against an individual by presentment of a case to the grand jury is an act by an advocate intimately related to the judicial phase of the criminal process to which absolute prosecutorial immunity applies. *See Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (The act of "knowingly presenting false evidence to, while at the same time withholding exculpatory evidence from [the grand jury] ... lie[s] at the very core of a prosecutor's role as an advocate engaged in the judicial phase of the criminal process.") (citing *Imbler*, 424 U.S. at 431 & n. 34); *Pinaud v. County of Suffolk*, 52 F.3d at 1149 (holding district attorneys absolutely immune from claim for malicious

prosecution and presentation of false evidence to the grand jury); *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir. 1984) ("The presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity...."); *J. & W. Trading & Leasing Inc. v. New York*, No. 5:15-CV-327 (GLS/DEP), 2015 WL 4135961, at *3 (N.D.N.Y. 2015) (granting absolute immunity where prosecutor allegedly presented false testimony before grand jury). Accordingly, plaintiff may not pursue his § 1983 action against DA McNamara based on his alleged failure to disclose evidence to the grand jury.

**\*5** The court concludes that DA McNamara is also immune from any suit by plaintiff based on his efforts to continue the prosecution of plaintiff's criminal case, although there is certainly less case law involving this scenario. Bearing in mind the standard of determining whether the specific conduct at issue is 'intimately associated with the judicial phase of the criminal process,' the court cannot conclude that DA McNamara's efforts to retry plaintiff's case after Judge Dwyer granted a mistrial runs afoul of the prosecutor's protected function of initiating a prosecution and presenting the State's case. *See, e.g.*, *Davis v. State of N.Y.*, No. 90 Civ. 6170, 1991 WL 156351, at *6 (S.D.N.Y. Aug. 6, 1991) (whatever the defendant prosecutors may have done to delay plaintiff's criminal retrial, "they acted in their capacity as advocates in the state's prosecution ... [and] are entitled to absolute immunity ...."), *aff'd sub nom. Davis v. New York*, 106 F. App'x 82 (2d Cir. 2004); *Russo v. Vermont*, No. 1:10-CV-296, 2011 WL 4537956, at *6, 8 (D. Vt. July 29, 2011) (notwithstanding the plaintiff's claim that the prosecutors in his case were "obsessed and won't let go[,]" their decision "to proceed with a retrial ... is protected by prosecutorial immunity"), *report and recommendation adopted*, 2011 WL 4566303 (D. Vt. Sept. 29, 2011).

There is no evidence that DA McNamara's conduct in this regard fell outside the scope of his function as an advocate. *See Anilao*, 27 F.4th at 865 (" '[A]bsolute immunity must be denied' only where there is both the absence of all authority (because, for example, no statute authorizes the prosecutor's conduct) and the absence of any doubt that the challenged action falls well outside the scope of prosecutorial authority.... Prosecutors thus have absolute immunity in a § 1983 action ... so long as 'they have at least a semblance of jurisdiction' that does not run far afield of their job description.' ") (citations omitted). In particular, there is no suggestion that DA McNamara's conduct in this respect could be interpreted as an "investigative or administrative task[ ]", for which the

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)

2023 WL 4935993

prosecutor would only be eligible for qualified immunity. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (quoting *Imbler*, 424 U.S. at 431 n.33); *see also McDonough v. Smith*, No. 1:15-CV-1505 (MAD/DJS), 2022 WL 3279348, at *17 (N.D.N.Y. Aug. 11, 2022) ("Investigative tasks beyond the scope of absolute immunity are those 'normally performed by a detective or police officer.' ") (quoting *Buckley*, 509 U.S. at 273); *Moye v. City of New York*, 11 Civ. 316, 2012 WL 2569085, at *6 (S.D.N.Y. July 3, 2012) ("[T]he Second Circuit has distinguished between 'preparing for the presentation of an existing case,' on the one hand, and attempting to 'furnish evidence on which a prosecution could be based,' on the other hand, with only the former entitling a prosecutor to absolute immunity.") (quoting *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998)). Accordingly, the complaint should be dismissed as against DA McNamara based on his absolute prosecutorial immunity.

## V. Defendant Utica Police Department

"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, No. 5:18-CV-1471(GTS/DEP), 2019 WL 981850, at *1 (N.D.N.Y. Jan. 7, 2019), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008)); *see also Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357 (GLS/ATB), 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014). Accordingly, the complaint as against defendant Utica Police Department must be dismissed for failure to state a claim upon which relief may be granted.

Even if the court were to construe plaintiff's claims against the Utica Police Department as against the City of Utica, dismissal would still be warranted. A municipality may only be named as a defendant in certain circumstances. Pursuant to the standard for establishing municipal liability laid out in *Monell*, in order to set forth a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some

action that caused his injuries beyond merely employing the misbehaving officer.").

**\*6** A municipality may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). A plaintiff must also establish a causal connection - an affirmative link - between the policy and the deprivation of his constitutional rights. *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985). Indeed, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of respondeat superior." *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000).

"[A] prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also id.* (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").

In this case, plaintiff has (1) not identified any of the Utica police officers who allegedly violated his constitutional rights as defendants in this action, and (2) has offered no evidence that any such officer was acting pursuant to a policy or custom of the City when they detained and/or arrested plaintiff, or throughout the course of plaintiff's criminal proceeding. Accordingly, the City cannot be held liable for plaintiff's allegations of false arrest/imprisonment, malicious prosecution or unspecified due process violations, as stated in the complaint.

## VI. Eighth Amendment Cruel and Unusual Punishment

Plaintiff has alleged an Eighth Amendment claim of cruel and unusual punishment. (Compl. at 7-8). Plaintiff does not specify against whom he alleges this violation of his

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)

2023 WL 4935993

Case 5:24-cv-01468-BKS-MJK    Document 12    Filed 01/06/25    Page 19 of 45

constitutional rights. (*Id.*). In any event, these protections of the Eighth Amendment "only apply to a person who has been criminally convicted and sentenced; they do not apply to the conduct of police officers in connection with the investigation and arrest of suspects prior to conviction and sentencing." *Spicer v. Burden*, 564 F. Supp. 3d 22, 31 (D. Conn. 2021) (citing *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986)); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Accordingly, any claim purportedly brought by plaintiff under the Eighth Amendment for cruel and unusual punishment must be dismissed.

## VII. Opportunity to Amend

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the court is recommending dismissal with prejudice as to defendant Utica Police Department, because the department may not be sued under § 1983. The court is further recommending dismissal with prejudice as to defendants Judge Dwyer, the Oneida County Courts and Officials, and DA McNamara, based on their absolute immunity from suit.

**\*7** Notwithstanding my recommendation that each of the named defendants be dismissed with prejudice, the court cannot say at this early stage of the litigation that plaintiff would be unable to amend his complaint to state a viable claim. Thus, the court recommends providing plaintiff the opportunity to amend his complaint for the limited purpose of asserting those claims alleging constitutional violations surrounding his detention, arrest, and subsequent criminal prosecution as set forth in his complaint, against the appropriate defendants. Plaintiff is reminded that if he intends to name the City of Utica as a defendant, he must plead, and ultimately prove, that a deprivation of his constitutional rights was caused by a custom, policy, or usage of the municipality. Likewise, plaintiff must specifically identify any individual law enforcement officer he is alleging violated his constitutional rights. If plaintiff chooses to amend his complaint, he must also specifically set forth the personal involvement of each named defendant relative to the conduct alleged to have violated his constitutional rights.

If the court approves this recommendation and allows plaintiff to submit a proposed amended complaint, plaintiff should be warned that any amended complaint must be a *complete and separate pleading*. Plaintiff must state all of his claims in the new pleading and may not incorporate by reference any part of his original complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, [1] and it is

[1]     Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED**, that this action be **DISMISSED WITH PREJUDICE** as against named defendants **UTICA POLICE DEPARTMENT, JUDGE MICHAEL L. DWYER, ONEIDA COUNTY COURTS a/k/a/ ONEIDA COUNTY COURTS AND OFFICIALS, and DISTRICT ATTORNEY SCOTT McNAMARA**, and it is

**RECOMMENDED**, that plaintiff's complaint otherwise be **DISMISSED WITHOUT PREJUDICE,** and that, if the District Court adopts this recommendation, plaintiff be given forty-five (45) days to amend his complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERSEDE THE ORIGINAL**, and that plaintiff must include all remaining facts and causes of action in the amended complaint. No facts or claims from the original complaint may be incorporated by reference, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff does not elect to amend his complaint within the imposed deadline, the case be dismissed in its entirety, with prejudice, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff files a proposed amended complaint, the proposed amended complaint be returned to me for review of the amended complaint and any orders relating to service on the defendants, and it is

2023 WL 4935993

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4935993

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)

2023 WL 4931609

2023 WL 4931609
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Brandon T. MCNAIR, Plaintiff,

v.

UTICA POLICE DEPARTMENT et al., Defendants.

6:23-CV-699
|
Signed August 1, 2023

**Attorneys and Law Firms**

BRANDON T. MCNAIR, Plaintiff, Pro Se, 421 Margaret
Street, Herkimer, NY 13350.

**ORDER ON REPORT & RECOMMENDATION**

DAVID N. HURD, United States District Judge

**\*1** On June 12, 2023, *pro se* plaintiff Brandon T. McNair
("plaintiff") filed this 42 U.S.C. § 1983 action alleging that
various defendants violated his civil rights. Dkt. No. 1. Along
with his complaint, plaintiff also sought leave to proceed *in
forma pauperis* ("IFP Application"). Dkt. No. 2.

On June 26, 2023, U.S. Magistrate Judge Andrew T. Baxter
granted plaintiff's IFP application and advised by Report
& Recommendation ("R&R") that plaintiff's complaint be
dismissed with partial leave to amend. Dkt. No. 4. As
Judge Baxter explained, plaintiff's claims against defendants
Utica Police Department, Judge Michael L. Dwyer, Oneida
County Courts, and District Attorney Scott McNamara
must be dismissed with prejudice because those defendants
were shielded from plaintiff's claims by various immunity
doctrines. *Id.* However, Judge Baxter concluded that plaintiff
might still be able to assert a viable claim, or perhaps
claims, for "alleged constitutional violations surrounding his

detention, arrest, and subsequent criminal prosecution as set
forth in his complaint, against the appropriate defendants." *Id.*

Plaintiff has not filed objections. The time period in which to
do so has expired. *See* Dkt. No. 4. Upon review for clear error,
the R&R is accepted and will be adopted in all respects. *See*
FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with prejudice against
defendants Utica Police Department, Judge Michael L.
Dwyer, Oneida County Courts a/k/a Oneida County Courts
and Officials, and District Attorney Scott McNamara;

3. Plaintiff's complaint is otherwise DISMISSED without
prejudice;

4. Plaintiff shall have forty-five days in which to file
an amended complaint that conforms with the instructions
set forth in Judge Baxter's June 26, 2023 Report &
Recommendation;

5. If plaintiff files an amended complaint within this forty-
five-day period, the matter shall be REFERRED to Judge
Baxter for further review and any other action as appropriate;
and

6. If plaintiff does not file an amended complaint within this
forty-five-day period, the Clerk of the Court is directed to
close this action without further Order of this Court.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4931609

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Coon v. Merola, Not Reported in Fed. Supp. (2019)**

2019 WL 1981416

Case 5:24-cv-01468-BKS-MJK    Document 12    Filed 01/06/25    Page 22 of 45

2019 WL 1981416
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Donald James COON, Plaintiff,

v.

Frank MEROLA, et al., Defendants.

1:19-CV-394 (DNH/ATB)
|
Signed 04/08/2019

**Attorneys and Law Firms**

Donald James Coon, Troy, NY, pro se.

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

**\*1** The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Donald James Coon, together with a motion to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2).

**I. In Forma Pauperis ("IFP") Application**
A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). The court finds for purposes of this recommendation, that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. Neitzke, 490 U.S. at 327; Harkins v. Eldridge, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to

show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp., 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. Complaint**
Although plaintiff's complaint is very conclusory, a liberal reading of the allegations contained therein show that plaintiff is attempting to allege that the Rensselaer County Clerk and his John/Jane Doe Deputy Clerks have violated plaintiff's constitutional rights in connection with a state court law suit that plaintiff has attempted to bring. (Complaint ("Compl.") *generally*) (Dkt. No. 1). In order to understand plaintiff's allegations in this action, the court must discuss another action filed by this plaintiff in 2016. In 2016, plaintiff filed a federal action in this court in which he named a variety of defendants, including Police Chief George Bell, the Villages of Cambridge and Greenwich, various district attorneys, Claverack Insurance Company, Glens Falls Hospital, Washington County Child Protective Services, and a police officer. Coon v. Bell, No. 1:16-CV-291 (TJM/DJS).

**\*2** After initial review of plaintiff's complaint in *Coon v. Bell*, Magistrate Judge Daniel Stewart found that plaintiff failed to state claims against the defendants and recommended that he be allowed to file an amended complaint in an effort to cure the deficiencies in the original. (Dkt. No. 8 in 16-CV-291). United States District Court Judge Thomas J. McAvoy adopted Magistrate Judge Stewart's recommendation on May 23, 2016. (Dkt. No. 11 in 16-CV-291). Plaintiff complied with the court's direction and filed an amended complaint on May 23, 2016. (Dkt. No. 12 in 16-CV-291).

Coon v. Merola, Not Reported in Fed. Supp. (2019)

2019 WL 1981416

Case 5:24-cv-01468-BKS-MJK    Document 12    Filed 01/06/25    Page 23 of 45

Magistrate Judge Stewart conducted an initial review of the amended complaint and found that plaintiff failed to cure most of the deficiencies that were in the original. (Dkt. No. 13 in 16-CV-291). Magistrate Judge Stewart recommended dismissing most of the claims and most of the defendants from the action, while allowing a Fourth Amendment illegal search claim and Fourth Amendment excessive force claim to proceed against defendant Bell. [1] (Dkt. No. 13 in 16-CV-291). Magistrate Judge Stewart's recommendation was adopted by Judge McAvoy on November 2, 2016. (Dkt. No. 16 in 16-CV-291).

[1]    Defendant Bell has since passed away, and his estate's representative has been substituted as a party. (Dkt. Nos. 52, 71). Another defendant was joined to 16-CV-291, and there have been various other proceedings in that case, but those details are not relevant to this action.

In Magistrate Judge Stewart's report and recommendation, he found that plaintiff's defamation claims against defendant Bell and his attempted contract claims against defendant Bell and Claverack Insurance Company were, at best, state law claims. [2] (Dkt. No. 13 in 16-CV-291 at 4). Plaintiff then states that he "filed said claims" in the Rensselaer County Supreme Court. (Compl. at 1). Plaintiff states that in 2017, Judge Andrew G. Ceresia granted plaintiff poor person status, but that when he went to the Rensselaer County Clerk's office, defendant Merola told plaintiff that Judge Ceresia's order was "no good and they wouldn't honor it." (Compl. at 2). Plaintiff states that he brought Judge Ceresia's order to the Clerk's office four more times, and "finally" on March 11, 2019, a clerk that plaintiff had never seen before stamped the Judge's order and kept a copy. (Id.)

[2]    Although plaintiff states in this action that Magistrate Judge Stewart told plaintiff that the contract and defamation claims "needed to be refiled in Supreme Court," that is not exactly what Magistrate Judge Stewart said. His exact words were that "[l]iberally construed, plaintiff **might** be attempting to make state law defamation and intentional interference with a contract claims. **Again, however, Plaintiff's vague and conclusory allegations fail to plausibly state such claims.**" (Dkt. No. 13 in 16-CV-291 at 4) (emphasis added). The court merely notes this for the record. Magistrate Judge Stewart's dismissal

and his language are not relevant to the findings herein.

Plaintiff alleges that he has been denied his "rightful benefits and access to the court." Plaintiff states that he even had "to choose between the suit or my housing," and that he was homeless from January 12, 2018 until April 24, 2018. (Id.) Plaintiff states that the Rensselaer County Supreme Court wrote plaintiff "2 times the County Clerk's staff made me pay for RJI motion I had already paid for. They told me to give letter [sic] to the Clerk and I would get my monies back." (Id.)

Plaintiff states that he is seeking "just compensation" for the Rensselaer County Clerks' actions who refused to recognize his "poor person status" from 2017 until 2019. Plaintiff states that he still has not "received anything" from the "grant[ed] status" because the Clerks refused to grant "my said status." (Id.) Plaintiff seeks substantial monetary relief. (Id.)

### III. Judicial Immunity

#### A. Legal Standards

**\*3** With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

Absolute immunity extends to court clerks who perform tasks " 'which are judicial in nature and an integral part of the judicial process.' " *Proctor v. Quinn*, No. 19-CV-833, 2019 WL 692935, at \*2 (E.D.N.Y. Feb. 19, 2019) (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)). The court's " ' inherent power to control its docket is part of its function of resolving disputes between parties' and is thus 'a function for which judges and their supporting staff

Coon v. Merola, Not Reported in Fed. Supp. (2019)

2019 WL 1981416

are afforded absolute immunity.' " *Id.* (quoting *Rodriguez*, 116 F.3d at 66); and citing *Pikulin v. Gonzalez*, No. 07-CV-0412 (CBA), 2007 WL 1063353, at \*2 (E.D.N.Y. Apr. 5, 2007) (finding that absolute judicial immunity extends to "the Clerk's Office activities of filing and docketing legal documents"). However, a court clerk may not be entitled to absolute immunity where the clerk's refusal to accept the papers of a litigant seeking to commence an action results in the deprivation of the individual's constitutional rights. *Glass v. New York Supreme Court Appellate Division*, No. 1:17-CV-226, 2017 WL 9487181, at \*3 (N.D.N.Y. Apr. 26, 2017) (citations omitted).

In determining whether the clerk's conduct in a particular case is "judicial" in nature, the court takes a "functional approach" and allows the defendant absolute immunity when the clerk is performing a "discretionary act, or performing a duty that inherently relates to resolving a dispute." *Vance v. State of New York Dep't of Corrections*, No. 9:18-CV-748, 2018 WL 6047828, at \*10 (N.D.N.Y. Nov. 19, 2018) (quoting *Dzwonczyk v. Suddaby*, No. 10-CV-0300, 2010 WL 1704722, at \*6 (N.D.N.Y. Apr. 28, 2010) (citing *Rodriguez*, 116 F.3d at 67) (internal quotation marks omitted)).

**B. Application**

Plaintiff's statements in this case are conclusory and essentially, he is suing the "clerks" because they would not file his poor person status order between 2017 and 2019. At best, he alleges a delay in granting him poor person status because it appears that a clerk finally took and filed plaintiff's order, and at the end of his complaint, plaintiff alleges that he "still" has not "received a thing or any help from ***the granyted [sic] status***." (Compl. at 2) (emphasis added). It is unclear what plaintiff believes he should have "received" or to what "help" he thinks he is entitled from the clerks beyond filing his order.

It is also unclear how plaintiff alleges that he was denied "access to courts" because he states that he filed his state law claims in the Rensselaer County Supreme Court. (Compl. at 1). However, he claims he was denied his "rightful benefits," and that somehow the clerk's actions in delaying the filing of his poor person order were related to his homelessness between January 12, 2018 and April 24, 2018. Plaintiff claims that he had to choose between "the suit" or his housing, but he does not explain why this is true or why this would be a denial of his constitutional rights. Plaintiff also states that the clerks made plaintiff pay for his RJI "motion," but that he was told that if he wrote a letter, he would get his money back.

**\*4** As it is written, plaintiff's complaint is too conclusory to state a claim against any of the clerks in this action, whether named or unnamed, [3] and the court will recommend dismissal.

[3]       Finally, the court must note that the United States Marshal would not be able to effect service of process on a "John or Jane Doe" defendant. In order for plaintiff to pursue his claims against John Doe defendants, he would ultimately be required to ascertain their identity. *LaPoint v. Vasiloff*, No. 5:15-CV-185, 2015 WL 1524437, at \*4 (N.D.N.Y. Apr. 2, 2015).

**IV.** **Opportunity to Amend**

**A. Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

**B. Application**

In this case, the court will recommend dismissal without prejudice, even though the court has serious doubts that plaintiff will be able to amend his complaint to state a claim. However, because there are situations in which a clerk would not be entitled to absolute immunity, and plaintiff in this case has failed to include enough facts for the court to make an accurate determination, the court will recommend dismissal without prejudice to plaintiff submitting an amended complaint.

If the court adopts this recommendation, and plaintiff is afforded the opportunity to amend, he should be afforded forty-five (45) days from the date of the order adopting this court's recommendation. Plaintiff should also be advised that if he files an amended complaint, it must be a complete pleading which must supercede the original and may not incorporate any facts from the original by reference.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED for purposes of filing**, and it is further

Case 5:24-cv-01468-BKS-MJK    Document 12    Filed 01/06/25    Page 25 of 45
Coon v. Merola, Not Reported in Fed. Supp. (2019)
2019 WL 1981416

**RECOMMENDED**, that the complaint be **DISMISSED** based on quasi-judicial immunity and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii) **WITHOUT PREJUDICE** to plaintiff filing an amended complaint, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, plaintiff be directed to file his amended complaint or ask for an extension of time to do so within **FORTY-FIVE (45) DAYS** from the date of the District Court's order adopting the recommendation, and it is

**RECOMMENDED**, that if plaintiff files an amended complaint within the appropriate time, the court return the proposed amended complaint to me for initial review, and it is

**RECOMMENDED**, that if the court adopts this recommendation, and plaintiff fails to file an amended complaint or ask for an extension of time to do so at the expiration of the forty-five (45) days, the complaint be dismissed with prejudice and the case closed, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1981416

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Coon v. Merola, Not Reported in Fed. Supp. (2019)

2019 WL 1978595

2019 WL 1978595
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Donald James COON, Plaintiff,

v.

Frank MEROLA, Rensselaer County Clerk; and Jane/
John Does, Clerks at County Clerk's Office, Defendants.

1:19-CV-394 (DNH/ATB)
|
Signed 05/03/2019

**Attorneys and Law Firms**

DONALD JAMES COON, Plaintiff pro se, 289 5th Avenue,
Troy, NY 12180.

### DECISION and ORDER

DAVID N. HURD, United States District Judge

 **\*1** Pro se plaintiff Donald James Coon brought this civil
rights action pursuant to 42 U.S.C. § 1983. On April 8, 2019,
the Honorable Andrew T. Baxter, United States Magistrate
Judge, advised by Report-Recommendation that plaintiff's
complaint be dismissed without prejudice but that he be
given an opportunity to amend. No objections to the Report-
Recommendation have been filed.

Based upon a careful review of the entire file and the
recommendations of the Magistrate Judge, the Report-
Recommendation is accepted in whole. See 28 U.S.C. §
636(b)(1).

Therefore, it is

ORDERED that

1. Plaintiff's complaint is DISMISSED without prejudice;

2. Plaintiff is provided forty-five (45) days from the date of
this Decision and Order to file an amended complaint that
cures the defects identified in the Report-Recommendation;

3. If plaintiff files a timely amended complaint, it be
forwarded to the Magistrate Judge for review; and

4. If plaintiff fails to file an amended complaint within forty-
five (45) days of the date of this Decision and Order, the
complaint be dismissed with prejudice and without further
order.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1978595

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4394681
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Ramon FLORES, Plaintiff,
v.
Steve LEVY, Thomas J. Spota, III, Wilma
Peterson, Louis J. Ohlig, Edward Vitale, Douglas
M. O'connor, John A.Bray, Linda Kevins,
John Scarglato, Dana Brown, Defendants.

No. 07-CV-3753 (JFB)(WDW).
|
Sept. 23, 2008.

**Attorneys and Law Firms**

Ramon Flores, pro se.

Wilma Peterson, pro se.

Assistant Suffolk County Attorney Brian C. Mitchell,
Hauppauge, NY, for defendants Thomas J. Spota III, Linda
Kevins, John Scarglato, Dana Brown and Steve Levy.

Amy M. Monahan of L'Abbate, Balkan, Colavitta & Contini
LLP, Garden City, NY, for defendants Robert C. Mitchell,
Edward Vitale, and Douglas O'Connor.

MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

**\*1** Plaintiff Ramon Flores ("plaintiff" or "Flores"), brings
this action against Suffolk County Executive Steve Levy
("Levy"), Suffolk County District Attorney Thomas J. Spota
III ("Spota"), Assistant District Attorneys Linda Kevins
("Kevins"), Dana Brown ("Brown"), and John Scarglato
("Scarglato") (collectively, "defendant prosecutors"), Suffolk
County Court Judge Louis J. Ohlig ("Judge Ohlig")
(collectively, "County Defendants"), Legal Aid Society
Attorneys Robert C. Mitchell ("Mitchell"), Edward "Ed"
Vitale ("Vitale"), and Douglas M. O'Connor ("O'Connor")
(collectively, "Legal Aid defendants"), John A. Bray, and
Wilma Peterson, alleging malicious prosecution, conspiracy
under 42 U.S.C. § 1983, and deliberate indifference, all
arising from defendant's prosecution.

Defendants moved to dismiss the claims pursuant to
Fed.R.Civ.P. 12(c). For the following reasons, defendants'
motions are granted.

I. BACKGROUND

A. Facts

The following facts are taken from the complaint and are not
findings of fact by the court. The Court assumes these facts to
be true for the purpose of deciding this motion and construes
them in the light most favorable to plaintiff, the non-moving
party.

On February 20, 2003, Flores was arrested in Suffolk County
and charged with one count of criminal assault in the second
degree and one count of criminal contempt in the first degree.
(Compl.¶ 1.) On February 25, 2003, an unidentified man came
to see Flores and told him it was not advisable that he testify
before the grand jury. (Compl.¶ 3.) The unidentified man
stated that he was not an attorney and that he could not answer
any additional questions. (Compl.¶ 3.) Later that afternoon,
plaintiff appeared before the court and was provided with
what he believed to be Legal Aid counsel. (Compl.¶ 4.)

On March 5, 2003, plaintiff was taken to the Suffolk County
Court and arraigned on indictment 493-03, which charged
plaintiff with: 3 counts of assault in the second degree, 2
counts of criminal contempt in the first degree, aggravated
contempt, and menacing. (Compl.¶ 4.) Plaintiff informed
the court that he still had no formal attorney of record.
(Compl.¶ 4A.) The Court appointed a Legal Aid attorney
to represent plaintiff. (Compl.¶ 4B.) After the arraignment,
plaintiff complained to Legal Aid attorney Douglas O'Connor
that plaintiff was not provided with an attorney at an earlier
stage. (Compl.¶ 4C.) O'Connor informed plaintiff that a
motion to dismiss would be filed on the grounds that plaintiff
was not afforded an opportunity to testify before the grand
jury, and that plaintiff was not provided counsel at the time
the grand jury was convened. (Compl.¶ 4C.)

On April 3, 2004, plaintiff returned to court and spoke to his
appointed Legal Aid attorney Edward Vitale. (Compl.¶ 5.)
Plaintiff reviewed the proposed motion to dismiss. (Compl.¶
5.) Plaintiff was unhappy that the motion did not raise the
issue of plaintiff's prior lack of representation. (Compl.¶
5.) Plaintiff ordered Vitale not to file the motion. (Compl.¶
5.) Vitale became angry with plaintiff and told plaintiff

he was "on his own." (Compl.¶ 5.) Plaintiff notified the Court that he was not satisfied with the motion. (Compl.¶ 5B.) Vitalerequested that he be removed as counsel for plaintiff. (Compl.¶ 5B.) The Court granted Vitale's request and appointed John Bray as counsel. (Compl.¶ 5B.) Further, the court provided plaintiff with additional time to file his motion to dismiss, in order to allow his newly appointed counsel to review the motion. (Compl.5B.)

**\*2** On April 8, 2003, the court formally appointed Bray as counsel. The case was adjourned for second call so that plaintiff and Bray could confer. (Compl.¶ 6.) Plaintiff asked Bray to amend the motion to dismiss to include an affidavit, noting that plaintiff was not provided with counsel at the time of indictment. (Compl. ¶ 6A .) Bray refused to make the changes and argued with plaintiff. (Compl.¶ 6A.) No second call occurred and the case was adjourned until April 28, 2003. Thereafter, plaintiff notes that Bray refused to assist him and was not responsive to plaintiff's requests. (Compl.¶ 6B.) On April 18, 2003, plaintiff filed a motion to dismiss, asserting that he was not provided representation during a critical stage of the action. (Compl.¶ 6C.) On April 26, 2004, plaintiff received legal mail containing an order from Judge Ohlig, dismissing the indictment based upon a lack of legal counsel provided to plaintiff. (Compl.¶ 6D.)

On May 4, 2003, plaintiff filed three grievances with the Tenth Judicial District against O'Connor, Vitale, and Bray. (Compl. ¶ 7 .) Plaintiff accused the attorneys of failing to safeguard his rights, lying to him, and failing to provide competent assistance. (Compl.¶ 7.) In addition, plaintiff filed a grievance against Judge Ohlig alleging that he violated plaintiff's constitutional rights. (Compl.¶ 7.)

On May 5, 2003, plaintiff appeared in court to testify before a second grand jury. (Compl.¶ 8.) Plaintiff refused to testify before the grand jury because he did not trust Bray. (Compl.¶ 8.) Plaintiff informed the court of his objections to Bray's representation. (Compl.¶ 8A.) As a result of not testifying, plaintiff claims that he was unable to provide the mitigating defense of "Intoxication." (Compl.¶ 8B.)

On May 19, 2003, plaintiff was arraigned on the superseding indictment 111-03, which contained the same 7 counts as the original indictment, plus an additional count of assault in the first degree. (Compl.¶ 9.) Plaintiff alleges that the complainant testified before the grand jury that plaintiff had "knocked out her teeth" thereby implying that there was a loss of actual teeth, when, in fact, it was "broken bridge

work." (Compl.¶ 9Ai.) Plaintiff alleges that the prosecution knew this testimony was false because the medical records in the prosecution's possession indicated that it was broken bridge work and not a loss or break of actual teeth. (Compl.¶ 9Aii.) Plaintiff concludes that the additional first degree assault charge was added as a punitive tactic designed to silence and stop plaintiff from "asserting and continuing to petition for redress" of his constitutional right to counsel. (Compl.¶ 9B.)

In August of 2004, plaintiff was tried on the eight counts contained within the second indictment. (Compl.¶ 11.) Plaintiff alleges that, on August 4, 2004, on direct examination, Wilma Peterson falsely testified that plaintiff had knocked out her teeth. (Compl.¶ 13.) On August 5, 2004, Brown alluded to the fact that Ms. Peterson had the "knocked out teeth" repaired with bridge work. (Compl.¶ 14.) Plaintiff shouted out that the alleged injury was broken bridge work and not actually teeth. (Compl.¶ 14A.) The Court then asked Ms. Peterson whether plaintiff broke her teeth or bridge work. (Compl.¶ 14A.) Ms. Peterson responded that it was bridge work which wasbroken by plaintiff's actions. (Compl.¶ 14A.) The prosecution allegedly failed to elicit a recantation from Ms. Peterson as to her testimony that she lost actual teeth. (Compl.¶ 14B.)

**\*3** On September 2, 2004, after a trial on the charges in the indictment before the court without a jury, plaintiff was convicted of Assault in the Second Degree under Counts 3 and 4, Menacing in the Second Degree under Count 5, Aggravated Criminal Contempt under Count 6, and Criminal Contempt in the First Degree under Count 7. (Compl. at A-2.) Plaintiff was acquitted on the crime of Assault in the First Degree under Count 1, Assault in the Second Degree under Count 2, and Criminal Contempt in the First Degree under Count 8. (Compl. at A-2 and A-3.) The court noted that the basis for acquittal on the Assault in the First Degree charge was the prosecution's failure to establish "serious physical injury," especially in the absence of testimony by a medical expert regarding the victim's condition. *See* September 2, 2004 Decision (Attached to Compl. at A-3) ("While the photographs introduced into evidence by the People did establish that the victim did suffer considerable bruises and a knife wound, these injuries did not rise to the level of serious under the definition found in the Penal Law.").

B. Procedural History

On September 5, 2007, plaintiff filed this complaint alleging malicious prosecution, conspiracy, and deliberate indifference. On January 31, 2007, the Legal Aid defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 1, 2008, the County Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On May 2, 2008, *pro se* defendant Wilma Peterson filed an answer to the complaint. On May 27, 2008, plaintiff filed an opposition to defendants' motions to dismiss. On June 2, 2008, the Legal Aid defendants filed their reply brief. On June 6, 2008, the County defendants filed their reply brief. On June 22, 2008, Ms. Peterson moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (6). On September 2, 2008, plaintiff filed his opposition to Ms. Peterson's motion.

### C. Defendant's Motion to Strike

On August 8, 2008, *pro se* plaintiff filed a motion to strike Ms. Peterson's motion to dismiss. In particular, plaintiff objected to the fact that he did not receive copies of certain exhibits that Peterson attempted to file under seal with her motion to dismiss, which the Court declined to accept for filing and returned to the defendant because they were unnecessary for purposes of deciding the motion to dismiss and would not be considered by the Court. For the reasons discussed below, plaintiff's request to strike the motion on such grounds is frivolous.

On July 22, 2008, in connection with her motion to dismiss, *pro se* defendant attempted to file certain exhibits that consisted of medical records, which she requested be placed under seal and not provided to plaintiff. The purpose of these exhibits was to corroborate Ms. Peterson's description in her affidavit of the injuries, which she testified resulted from plaintiff's assault on her, and to explain why she mistakenly described her broken bridge work as her bottom teeth:

> **\*4** The plaintiff did punch me in my mouth, and, as I relived my horrific ordeal during my testimony in front of a second Grand Jury, I mistakenly described my broken bridge work as my bottom teeth. However, I did not conspire with anyone to make any misleading statements. I was only trying to relate the horrible experience of the night the plaintiff assaulted me.

The medical documents the plaintiff made reference to which formed the basis of his complaint against me, also describes the extent of my injuries caused by the brutal acts he committed against me.

> For more than three hours, during the plaintiff's assault on me, he repeatedly punched me all over my body, he stabbed me with a meat cleaver and a knife, he bit me on my body, spat in my face and pulled a significant amount of my hair out of my head. He hopped on my broken leg, of which, I was wearing a cast and stabbed my broken leg with a knife and a meat cleaver. Throughout the plaintiff's assault on me, he continuously threatened to cripple me, to blind me, to paralyze me and to kill me.

> When the plaintiff punched me in my mouth, he hit me so hard that he indeed broke my bridge work in the bottom of my mouth which also cut a large gash inside my bottom lip and punctured a hole in my bottom lip. As to date, I continue to suffer from nerve damage in my bottom lip. I have a permanent two and a half inch scar inside my bottom lip and a scar outside of my bottom lip from the punctured hole.

> I have bruises all over my body. I had to see an optometrist for treatment of trauma to my eye. I have permanent scars on my forehead, hands and left leg. I continue to suffer from nerve damage in my left leg where he stabbed me with a knife. The plaintiff kicked me, very hard, in my lower back, thus, exacerbating a prior injury to my lower back that the plaintiff was aware of before he assaulted me. I now have facet damage in my lower back. And I am in constant pain.

(Peterson Affidavit, at 2-3) (citations omitted).

On July 22, 2008, the Court issued an order declining to accept these medical exhibits because the Court, for purposes of a motion to dismiss under Rule 12(b)(6), must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). Thus, "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). Given this standard, the Court explained in the July 22 Order:

> In the instant case, under this standard, the Court may not consider these medical records in connection with the motion to dismiss; rather, the

Court will determine whether the allegations in the complaint state a legal claim against the defendant. In other words, consideration of these medical exhibits is unnecessary for purposes of deciding the motion. Therefore, the Court is declining to accept these exhibits at this time and the Clerk of the Court shall return them to plaintiff. Because Exhibits C-G are not being accepted or considered by the Court, her application to have the records sealed is moot and defendant need not serve such exhibits on defendant.

**\*5** (July 22, 2008 Order, at 1-2.)

Although plaintiff contends in his motion to strike that he cannot reply to defendant's submission without such exhibits, that argument is frivolous. As noted above, the Court has assumed his allegations in the complaint to be true and has not considered these exhibits. In fact, that is the reason the Court declined to accept them. Moreover, none of the factual information contained in Ms. Peterson's affidavit, and recited above, is pertinent to the legal issues in the motion to dismiss. Specifically, the primary issues, as discussed *infra,* based upon the allegations in the complaint, are (1) whether the private actor defendants (namely, Ms. Peterson and plaintiff's court-appointed attorneys) can be sued under Section 1983, and (2) whether the prosecutors have absolute immunity. The nature and extent of Ms. Peterson's injuries, as well as any medical records corroborating such injuries, have no relevance to the consideration of these legal issues. There is no basis to require Ms. Peterson to supply these materials to plaintiff, and unnecessarily reveal private medical information, where the Court rejected them for filing because they have no relevance at the motion to dismiss stage in determining whether plaintiff has a plausible Section 1983 claim. Therefore, plaintiff's motion to strike the defendant's motion was denied on August 21, 2008, and he was directed to file his opposition by September 15, 2008, which plaintiff did do.

D. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic,* 127 S.Ct. at 1974. The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.*

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant,* "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.... This obligation entails, at the very least, a permissive application of the rules governing theform of pleadings.... This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant,* No. 06-1590-cv, 2008 U.S.App. LEXIS 17113, at \* 15-\* 16 (2d Cir. Aug. 12, 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.,* 287 F.3d 138, 145-46 (2d Cir.2002) (holding that when plaintiff is appearing *pro se,* the Court shall " 'construe [his complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.' ") (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)); *accord Sharpe v. Conole,* 386 F.3d 483, 484 (2d Cir.2004).

**\*6** Finally, in connection with a motion to dismiss under Rule 12(b) (6), as noted above, the Court may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis,* 421 F.3d at 100; *accord Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Here, plaintiff appended certain documents to his complaint and the Court has confined its review to the face of the complaint and the documents attached thereto by plaintiff.

II. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (false arrest) and citing *Conway v. Vill. of Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984) (malicious prosecution)).

A. The Legal Aid Attorneys and Ms. Peterson
Plaintiff asserts Section 1983 claims against (1) Ms. Peterson based upon her allegedly false testimony in connection with his criminal case; and (2) his Legal Aid Attorneys for their alleged failure to adequately represent him in connection with his initial indictment. As discussed below, the Section 1983 claims against these defendants fail as a matter of law because (1) none of these defendants are state actors; and (2) plaintiff's conclusory allegations of conspiracy between these defendants and state actors cannot withstand a motion to dismiss. [1]

[1]    As a threshold matter, there is a substantial question as to whether plaintiff can proceed at all on a malicious prosecution claim for his acquitted counts because they were so closely intertwined with his counts of conviction and are both felonies. The Court recognizes that, in contrast to false arrest claims, the Second Circuit has noted that a conviction on one claim does not necessarily absolve liability under § 1983 for malicious prosecution as to other criminal charges which were resolved favorably to plaintiff. *See Janetka v. Dabe,* 892 F.2d 187, 190 (2d Cir.1989) (holding that claim of malicious prosecution on charge of resisting arrest, of which plaintiff was acquitted, was not barred by his conviction for disorderly conduct); *see also Posr v. Doherty,* 944 F.2d

91, 100 (2d Cir.1991) (highlighting "the need to separately analyze the charges claimed to have been maliciously prosecuted"). Thus, for the same reasons in this case, a conviction on assault in the second degree does not necessarily bar a malicious prosecution claim on assault in the first degree or attempted assault in the first degree; rather, the Court should analyze a number of factors, including the relative seriousness of the two offenses, "whether the elements of each charge are different, whether one charge is a lesser included offense of the other, and whether the alleged actions were directed at different people." *Picardo v. N.Y. Police Dep't.,* No. 98-CV-429 (DLC), 1998 WL 812049, at *3 (S.D.N.Y. Nov. 18, 1998) (citing *Janetka,* 892 F.2d at 190); *see also Ostroski v. Town of Southold,* 443 F.Supp.2d 325, 335-40 (E.D.N.Y.2006) (discussing factors). Analyzing the various factors in the instant case-including that both crimes are felonies (and thus are both serious crimes), and arose out of the same incident-the Court concludes that the existence of probable cause as to the counts of conviction should preclude a malicious prosecution claim on the acquitted counts. In fact, as the judge who presided over the bench trial noted, the basis for the acquittal on the assault in the first degree (despite the conviction for assault in the second degree) was the prosecution's failure to demonstrate serious injury. Thus, the acquitted charges are "so closely intertwined with the offense of conviction that there is no reasonable basis to conclude that the [dismissal of] these charges is sufficiently distinct to support a claim of malicious prosecution." *Picardo,* 1998 WL 812049, at *4 (finding conviction on misdemeanor charge precluded malicious prosecution on felony assault count arising out of same incident). In any event, the Court finds that there are numerous other grounds for dismissal of the case, discussed in detail *infra.*

(1) State Action Requirement

An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson,* 454 U.S. 312, 317-38 (1981) (quoting *United States v. Classic,* 313 U.S. 299 (1941)). Thus, a deprivation of a federal statutory or

Constitutional right is actionable under Section 1983 when such deprivation is caused "by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). Under this standard, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West,* 487 U.S. at 50.

**\*7** In the instant case, it is clear from the allegations of the complaint that neither Ms. Peterson who was the alleged victim of the assault that was the subject of plaintiff's criminal trial, nor the Legal Aid Attorneys who represented plaintiff in the pre-trial stage, are state actors. With respect to his Legal Aid Attorneys, it is axiomatic that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson,* 454 U.S. at 325; *see also Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000) ( "[A] legal aid society ordinarily is not a state actor amenable to suit under § 1983.") (citations omitted); *Rodriguez v. Weprin,* 116 F.3d 62, 65-66 (2d Cir.1997) (affirming dismissal of Section 1983 claim against court-appointed appellate attorney for alleged involvement in denial of speedy appeal and noting that "it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983") (collecting cases); *Housand v. Heiman,* 594 F.2d 923, 924-25 (2d Cir.1979) ("[P]ublic defenders or court-appointed defense attorneys do not 'act under color of law.' "); *Sanchez v. Gazzillo,* No. 00-CV-6405 (JS)(MLO), 2001 U.S. Dist. LEXIS 7786, at \* 17 (E.D.N.Y. June 5, 2001) (dismissing Section 1983 claim against plaintiff's Legal Aidattorneys). Similarly, with respect to Ms. Peterson, the fact that plaintiff alleges that she perjured herself as a witness at his trial does not transform her into a state actor. *See, e.g., Elmasri v. England,* 111 F.Supp.2d 212, 221 (E.D.N.Y.2000) ("[T]he mere fact that an individual testifies at a court proceeding does not render that person a state actor.") (citing *Briscoe,* 460 U.S. at 329-30); *see also Mitchell v. Mid-Erie Counseling Service,* No. 05-CV6169 CJS(P), 2005 WL 1579810, at \*3 (W.D.N.Y. June 29, 2005) (" 'A witness testifying in a state court proceeding-even if [she] is a state employee who has perjured [herself]-has not acted under color of state law for purposes of § 1983.' ") (quoting *McArthur v. Bell,* 788 F.Supp. 706, 710 (E.D .N.Y.1992)).

Although these individuals are clearly not state actors, the Court recognizes that a private actor can be considered as acting under the color of state law for purposes of Section 1983 if the private actor was " 'a willful participant in joint activity with the State or its agents.' " *See Ciambriello,* 292 F.3d at 324 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)) (citation omitted). This potential liability also applies to a court-appointed attorney where the attorney "conspires with a state official to violate the plaintiff's constitutional rights." *Fisk v. Letterman,* 401 F.Supp.2d 362, 378 (S.D.N.Y.2005). Thus, the Court will next examine plaintiff's conspiracy claim to determine whether the allegations are sufficient to survive a motion to dismiss.

### (2) Conspiracy Pursuant to § 1983

**\*8** The plaintiff alleges that "all of the defendants ... acted in collusion with the Suffolk County District Attorney's Office and thereby *UNDER COLOR OF STATE LAW* to violate my Federal and State 4th, 5th, 6th and 14th Amendment Constitutional Rights of The Accused." Specifically plaintiff alleges that the Legal Aid defendants conspired with the County Defendants, Bray, and Ms. Peterson to: (1) prevent him from testifying before a grand jury;

(2) deny him effective assistance of counsel; and charge him with additional, higher counts.

The mere use of the term "conspiracy" or "collusion" does not instantly transform a private actor into a state actor for purposes of Section 1983 and is clearly insufficient to satisfy Rule 12(b) (6) in connection with a Section 1983 conspiracy claim. *See Ciambriello,* 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."). Instead, "[i]n order to survive a motion to dismiss on a § 1983 conspiracy claim, the plaintiff must allege (1) an agreement between two or more state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Carmody v. City of New York,* No. 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 25308, at \*16 (S.D.N.Y. May 11, 2006) (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-35 (2d Cir.2002)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *See Ciambriello,* 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory");

*see also Walker v. Jastremski,* 430 F.3d 560, 564 n. 5 (2d Cir.2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983.") (citing *Ciambriello); Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Green v. Bartek,* No. 3:05-CV-1851, 2007 WL 4322780, at *3 (D.Conn. Dec. 7, 2007) ("The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations.").

The need to guard against the use of conclusory allegations of conspiracy in the context of Section 1983 lawsuits against private actors is particularly compelling. If a plaintiff could overcome a motion to dismiss simply by alleging in a conclusory fashion a "conspiracy" between private actors and state actors, these private actors-including lawyers and witnesses-would be subjected to the substantial cost and disruption incurred by litigants in the discovery phase of these lawsuits, without any indication whatsoever that the plaintiff has a "plausible" conspiracy claim. As the Second Circuit has emphasized, these conspiracy claims are "so easily made and can precipitate such protracted proceedings with such disruption of governmental functions" that "detailed fact pleading is required to withstand a motion to dismiss" them. *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981).

**\*9** As discussed below, the complaint does not contain any specific allegations supporting a "plausible" conspiracy claim involving these private actors and the County Defendants. *Pro se* plaintiff's complaint is nothing more than a compendium of conclusory, vague, and general allegations of a conspiracy to deprive him of constitutional rights. "Diffuse expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer v. Aronwald,* 567 F.2d 55, 533 (2d Cir.1997). Of course, the Court recognizes that "[a plaintiff is not required to list the place and date of defendant['s] meetings and the summary of their conversations when he pleads conspiracy, ... but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman,* 401 F.Supp.2d 362, 376 (S.D.N.Y.2005) (report and recommendation), accepted by, in part, rejected by, in part, *Fisk v. Letterman,* 401 F.Supp.2d 362 (S.D.N.Y.2005) (citations and quotations omitted). As the Supreme Court recently articulated in *Bell Atlantic Corp. v. Twombly,* although a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint

must be "enough to raise a right to relief above the speculative level." 127 S.Ct. at 1965.

### i. Wilma Peterson

Plaintiff alleges that Ms. Peterson participated in the malicious prosecution against him by providing false testimony to the second grand jury and at trial that plaintiff had broke her bottom teeth. Moreover, plaintiff alleges that the defendant prosecutors were complicit in that perjury because the defendant prosecutors failed to correct the testimony. Nowhere in the complaint does plaintiff specifically assert that an explicit, or even implicit, agreement existed between Ms. Peterson and the defendant prosecutors to enter into a conspiracy. *See Ciambriello,* 292 F.3d at 324 (dismissing Section 1983 conspiracy claim because "[a]bsent from [plaintiff's] complaint are any factual allegations suggesting that [the private actor defendant] conspired with the County"). Plaintiff simply relies on vague and conclusory allegations to imply that Ms. Peterson conspired with the defendant prosecutors. The mere allegation that Ms. Peterson committed perjury regarding damage to her teeth, and the prosecutor's alleged failure to correct such testimony, is insufficient to support a conspiracy claim. *See, e.g ., Rzayeva v. United States,* 492 F.Supp.2d 60 (D.Conn.2007) ("Plaintiffs' vague and conclusory allegations against private 'conspirators' are entirely unclear, unsupported by facts, and insufficient to substantiate their claims."); *Fiske,* 401 F.Supp.2d at 377 ("Communications between a private and a state actor, without factssupporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor."); *see also Marion v. Groh,* 954 F.Supp. 39, 43 (D.Conn.1997) (dismissing Section 1983 claim against a private citizen who testified against plaintiff at criminal trial where plaintiff made only generalized conspiracy allegations). Accordingly, plaintiff's claims of conspiracy regarding Ms. Peterson must be dismissed.

### ii. Legal Aid Defendants

**\*10** Plaintiff alleges that the Legal Aid defendants engaged in numerous conspiracies with the other defendants which include: (1) denying plaintiff his right to counsel; (2) preventing plaintiff from testifying before the grand jury; (3) allowing the defendant prosecutors to "lift" the indictment into the county court; and (4) adding the additional charge of assault in the first degree to the indictment.

Viewing the allegations in the light most favorable to plaintiff, the Court finds that plaintiff has not alleged a conspiracy involving the Legal Aid defendants and any other named party. Plaintiff has failed to articulate any allegations that would suggest that these alleged failures in performance by his attorneys, even if accepted as true, could plausibly support a claim that the Legal Aid defendants were part of a conspiracy with the County defendants. In fact, plaintiff failed to allege that Legal Aid defendants entered into an explicit or implicit agreement with any other named party to this lawsuit. Moreover, as the Second Circuit has noted, generalized allegations of conspiracy "ring especially hollow" where, as here, the parties alleged to be part of the same conspiracy have an "adversarial relationship." *Ciambriello,* 292 F.3d at 324. Given the complete absence of anything other than conclusory allegations of conspiracy, the Section 1983 claims against his Legal Aid attorneys cannot survive a motion to dismiss. *See also Green v. Bartek,* No. 3:05CV1851 (SRU), 2007 WL 4322780, at *3 (D.Conn. Dec. 7, 2007) (dismissing Section 1983 claim against plaintiff's appointed attorney in Family Court where, "[a]lthough [plaintiff] includes several statements regarding an alleged conspiracy, he includes no facts to support this claim"); *Williams v. Jurow,* No. 05 Civ. 6949(DAB), 2007 WL 5463418, at *12 (S.D.N.Y. June 29, 2007) ("Since plaintiff has alleged no facts that would, even if accepted as true, establish that the Legal Aid Defendants' conduct constituted state action, the constitutional claims against them should be dismissed.") (report and recommendation); *Brewster v. Nassau County,* 349 F.Supp.2d 540, 547 (E.D.N.Y.2004) (dismissing Section 1983 claim against Legal Aid Society where plaintiff alleged in a conclusory fashion that Legal Aid waived his rights and failed to adequately represent him in order to "benefit themselves and/or District Attorney," but did "not actually allege[ ] any facts indicating an agreement to act in concert to harm him"); *Hom v. Brennan,* 304 F.Supp.2d 374, 378-79 (E.D.N.Y.2004) (dismissing Section 1983 claim against supervising attorney with the Nassau-Suffolk Law Services because "plaintiff fails to allege with particularity what the alleged conspiracy is, the purpose of the conspiracy, who was involved in the conspiracy, the existence of an act in furtherance of the conspiracy, or that he was injured as a result of the conspiracy"); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at *3 (E.D.N.Y. Jan. 28, 1997) ("Notwithstanding the latitude afforded a *pro se* complaint, plaintiff fails to allege any facts supporting an inference that the Defense Attorney defendants colluded with the District Attorney defendants. While plaintiff's allegations

might support a state law malpractice action against his former defense attorneys, they do not support a federal court's exercise of jurisdiction under Section 1983.").

**\*11** In sum, having failed to sufficiently allege a conspiracy cause of action between Ms. Peterson, the Legal Aid defendants, and any state actor, the Court dismisses the Section 1983 claim against Ms. Peterson and the Legal Aid defendants. [2]

[2]     Defendant John A. Bray is the court-appointed attorney who replaced the Legal Aid defendants in defending plaintiff in his criminal case. (Compl.¶ 6.) Although defendant Bray has never appeared in this action (and it is unclear whether he was ever served), the Court dismisses the claims against him *sua sponte* because, like the Legal Aid defendants, he is not a state actor. Plaintiff has failed to state a cause of action under Section 1983 against him and plaintiff's claim against Bray, like the other claims in this case, is frivolous. *See, e.g., Liner v. Goord,* 196 F.3d 132, (2d Cir.1999) (holding that district court is authorized to "dismiss the complaint *sua sponte* if, among other things, the complaint is 'frivolous, malicious, or fails to states [sic] a claim upon which relief may be granted' ") (quoting 28 U.S.C. § 1915(a) & (b)(1)).

(3) Other Defects in Claims
against the Legal Aid Defendants

In addition to the legal defects discussed in detail above, there are a number of other grounds set forth by the Legal Aid defendants which independently require dismissal of plaintiff's claims against them as a matter of law.

First, although plaintiff claims that his constitutional rights were violated by the Legal Aid defendants because they failed to ensure his right to appear before the grand jury and testify, it is axiomatic that there is no constitutional right to testify before the grand jury. *See Burwell v. Superintendent of Fishkill Correctional Facility,* No. 06 Civ. 787(JFK), 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008) ("[T]here is no federal constitutional right to testify before the grand jury. In fact, there is no federal right to a grand jury in state criminal prosecutions."); *Affser v. Murray,* No. 04 CV 2715, 2008 WL 2909367, at *7 (E.D.N.Y. July 28, 2008) ("[C]ounsel's alleged failure to secure petitioner's presence before the grand jury

**Flores v. Levy, Not Reported in F.Supp.2d (2008)**
Case 5:24-cv-01468-BKS-MJK    Document 12    Filed 01/06/25    Page 35 of 45
2008 WL 4394681

does not constitute ineffective assistance") (collecting cases). Thus, any claimed deprivation of such a right is not actionable under Section 1983. *See Frankos v. LaVallee,* 535 F.2d 1346, 1348 n. 3 (2d Cir.1976) ("The complaint alleges that appellees successfully conspired to prevent appellant from testifying at a grand jury investigation of the prison stabbing and that attorney Wylie was incompetent in handling plaintiff's request to testify there. Since one must allege deprivation of a constitutional right under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, and there is no claim that there is a constitutional right to testify at a grand jury proceeding, the judgment of dismissal of these claims for relief is affirmed for lack of subject matter jurisdiction.").

Second, plaintiff suffered no injury from these alleged deprivations because, as set forth in plaintiff's complaint, the court dismissed the initial indictment and a superseding indictment was presented to a second grand jury during which plaintiff had the opportunity to testify, but refused to do so. (Compl.¶¶ 6(D), 8.) To the extent that plaintiff complains about the charges presented to the second grand jury or about his criminal trial, it is clear that he has no plausible claim for any such allegations against the Legal Aid defendants because they were replaced as his attorneys prior to the presentation of the superseding indictment to the second grand jury.

Third, plaintiff was convicted of all of the charges that were the subject of the initial indictment, which he claimed was the result of ineffective and unconstitutional conduct by the Legal Aid defendants. According to the complaint, the additional higher count of assault in the first degree was only contained in the second grand jury, at a time when he was no longer represented by the Legal Aid defendants. (Compl.¶ 9.) Therefore, any malicious prosecution claims, including any malicious prosecution conspiracy, against the Legal Aid defendants related to the charges in the first indictment are barred by Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477 (1994).[3]

---

[3]    The Legal Aid defendants also note that the plaintiff appealed his conviction and raised all of the identical arguments he now asserts in this civil lawsuit regarding alleged defects in the indictment, malicious prosecution, and ineffective assistance of counsel. The Appellate Division, Second Department denied his appeal and found his arguments were without merit. *See People v. Flores,* 40 A.D. 876, 878 (2d Dep't 2007) ("The defendant's remaining contentions, including

those raised in his supplemental pro se brief, that the indictment was defective, that he was maliciously prosecuted, and that he was deprived of the effective assistance of counsel, are without merit."). The Court of Appeals also denied Flores leave to appeal. *See People v. Flores,* 9 N.Y .3d 875 (2007).

**\*12** Finally, even assuming *arguendo* that some Section 1983 claim could exist based solely on the alleged ineffective conduct by the Legal Aid defendants, it would be time-barred. With respect to Section 1983 and 1985 claims, federal courts generally apply the forum state's statute of limitations for personal injury claims, which is three years in the State of New York. *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) ( Section 1983), *cert. denied,* 538 U.S. 922 (2003); *Paige v. Police Dep't of Schenectady,* 264 F.3d 197, 199 n. 2 (2d Cir.2001) ( Section 1985). Here, as set forth in the complaint, the Legal Aid defendants ceased representing plaintiff in April 2003. (Compl.¶ 6(D).) Because plaintiff commenced this action on September 5, 2007, more than three years after Legal Aid represented him, the claims against the Legal Aid defendants would be untimely even assuming they existed, which they do not for the other reasons outlined by the Court.

In sum, plaintiff does not have a plausible Section 1983 claim against the private actors-defendants Peterson, Mitchell, Vitale, O'Connor, and Bray-and such claims are dismissed as a matter of law under Rule 12(b)(6).

### B. Absolute Immunity

Plaintiff sues the various County Defendants-DA Spota and ADAs Kevins, Scarglato, and Brown-for allegedly improper conduct (1) in connection with his indictment in the grand jury by conspiring to deny him representation by counsel and to prevent him from testifying before the grand jury; and (2) in connection with his trial by eliciting perjured testimony from witnesses, including Ms. Peterson, and not correcting such testimony. Plaintiff asserts claims against these defendants for malicious prosecution, conspiracy to maliciously prosecute, and "deliberate indifference" to the fact that his rights were being violated in the above-referenced manners.

Defendants argue that the Court should dismiss plaintiff's claims against DA Spota and ADAs Kevins, Scarglato, and Brown on the grounds of absolute immunity. As set forth below, the Court agrees. It is abundantly clear from a review of the conduct allegedly attributed to these prosecutors that

all of the conduct was undertaken in their roles as Assistant District Attorneys (or in Mr. Spota's instance, as District Attorney) during the active prosecution of plaintiff and, thus, they are absolutely immune from a civil suit for damages under Section 1983.

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York,* 424 F.3d 231, 236 (2d Cir.2005) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 410, 431 (1976) (citation and quotation marks omitted)). "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.... This is because '[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.' " *Deronette v. City of New York,* No. 05-CV-5275, 2007 U.S. Dist. LEXIS 21766, at * 12 (E.D.N.Y. Mar. 27, 2007) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) and quoting *Imbler,* 424 U.S. at 419 n. 13). However, the Second Circuit has held that in the context of a motion to dismiss under Rule 12(b)(6), "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Hill v. City of New York,* 45 F.3d 653, 663 (2d Cir.1995).

**\*13** "In determining whether absolute immunity obtains, we apply a 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." *Hill,* 45 F.3d at 660 (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)). In applying this functional approach, the Second Circuit has held that prosecutors are entitled to absolute immunity for conduct " 'intimately associated with the judicial phase of the criminal process.' " *Fielding v. Tollaksen,* No. 06-5393-cv, 2007 U.S.App. LEXIS 28939, at \*3–\*4 (2d Cir. Dec. 12, 2007) (quoting *Imbler,* 424 U.S. at 430; *Hill,* 45 F.3d at 661 (same). In particular, "[s]uch immunity ... extends to acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Smith v. Bodak,* 147 F.3d 91, 94 (2d Cir.1998) (citation and quotation marks omitted). On the other hand, "[w]hen a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent. Immunity does not protect those acts

a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." *Hill,* 45 F.3d at 661; *see also Carbajal v. County of Nassau,* 271 F.Supp.2d 415, 421 (E.D.N.Y.2003) ("[W]hen a prosecutor supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest-that is, when he performs functions normally associated with a police investigation-he loses his absolute protection from liability.").

Once a court determines that a prosecutor was acting as an advocate, "a defendant's motivation in performing such advocative functions as deciding to prosecute is irrelevant to the applicability of absolute immunity." *Shmueli,* 424 F.3d at 237 (quoting *Bernard,* 356 F.3d at 502); *see also Kleinman v. Multnomah Cty.,* No. 03-1723-KI, 2004 U.S. Dist. LEXIS 21466, at \* 18 (D.Or. Oct. 15, 2004) ("The Ninth Circuit has interpreted *Imbler* to support absolute prosecutorial immunity even when a plaintiff alleges that the prosecutor went forward with a prosecution he believed not to be supported by probable cause.").

Plaintiff claims that defendant prosecutors maliciously commenced a criminal prosecution against plaintiff "through fraud and perjury" and "without probable cause to believe [he] committed the crime." *See* Compl. at 15. Specifically, plaintiff claims that the defendant prosecutors filed a second indictment with the additional charge of first degree assault, as punishment for plaintiff's protestations that he was denied his right to counsel. *See id.* Plaintiff further alleges that this additional charge was added as retribution due to plaintiff's grievances filed against the defendant prosecutors and Judge Ohlig. *See id.* In addition, plaintiff alleges that the defendant prosecutors knowingly elicited false testimony from Ms. Peterson in order to establish the necessary elements for first degree assault. (*See* Compl. at 16.)

**\*14** "It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false." *Urrego v. U.S.,* No. 00 CV 1203, 2005 WL 1263291, at \*2 (E.D.N.Y. May 27, 2005) (finding that a prosecutor is entitled to absolute immunity where he was alleged to have presented false evidence in order to obtain a superceding indictment) (citing *Buckley,* 509 U.S. 260; *Hill,* 45 F.3d at 662; *Bernard v. County of Suffolk,* 356 F.3d 495, 505 (2d Cir.2003)); *see also Storck v. Suffolk County Dep't of Social Servs.,* 62 F.Supp.2d 927, 943 (E.D.N.Y.1999) ("A prosecutor is also absolutely immune from charges alleging

the withholding of exculpatory evidence from a grand jury and suppressing *Brady* material. An allegation of conspiracy to perform the foregoing acts does not change the conclusion that the acts are entitled to absolute immunity.") (citations omitted). "[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial." *Dory v. Ryan,* 999 F.2d 679 (2d Cir.1993), *as modified at* 25 F.3d 81, 83 (2d Cir.1994). In *Tellier v. Petrillo,* plaintiff alleged that the United States attorneys had "formed a conspiracy to fabricate a new charge, not contained in the original indictment" and had "conspired to present the fabricated evidence to a grand jury in order to obtain a superceding indictment." 133 F.3d 907 (2d Cir.1997.) The Second Circuit affirmed the dismissal of the complaint, noting that the presentation of a superceding indictment was protected by absolute immunity. *Id.* Further, the Second Circuit has specifically held that a prosecutor's determination of which offenses to charge also is protected by absolute immunity. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993).

It is clear that defendant prosecutors' decision to seek a second indictment with the additional charge of first degree assault, as well as any alleged attempt to elicit false testimony from a witness, would be protected by absolute immunity. Similarly, defendants are absolutely immune from suit for any of the wrongful acts alleged in the complaint by plaintiff related to his claim that they presented perjured testimony at trial. Finally, any claim that the prosecutors deprived plaintiff of his right to testify before the first grand jury is also within the ambit of absolute immunity. [4] *See, e.g., Phillips v. Eppolito,* No. 02 Civ. 5662(DLC), 2004 WL 540481, at *2 (S.D.N.Y. March 17, 2004) ("The Complaint asserts that [the ADA] failed to permit [plaintiff] to testify in front of the Grand Jury. The act of failing to permit [plaintiff] to testify before a Grand Jury falls within the scope of activities protected by the doctrine of absolute immunity. Therefore, the claim of malicious prosecution against [the ADA] must be dismissed."); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at *2 (E.D.N.Y. Jan. 28, 1997) ("Plaintiff's complaint against the District Attorney defendants-that they denied him the right to testify before the Grand Jury-is based on their presentation of a case before the Grand Jury. It therefore falls within the scope of the prosecutors' absolute immunity.").

[4]    To the extent that plaintiff is attempting to argue that absolute immunity should not apply

because of some conspiracy between the County Defendants and private actors (such as the Legal Aid defendants and Ms. Peterson), that claim also fails for the reasons discussed in great detail in connection with the Legal Aid defendants and Ms. Peterson. Specifically, plaintiff alleges nothing more than conclusory allegations of conspiracy which are insufficient to survive a motion to dismiss.

**\*15** Accordingly, plaintiff's claims against the defendants Spota, Kevins, Scarglato, and Brown are dismissed based on the doctrine of absolute immunity. [5]

[5]    Plaintiff also alleges that Judge Ohlig conspired with the Legal Aid defendants and the defendant prosecutors to maliciously prosecute the plaintiff. Although Judge Ohlig has failed to appear in the case, the Court, *sua sponte,* finds that Judge Ohlig is entitled to absolute immunity. "A judge defending against a section 1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity." *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990). Where a judge is acting in a judicial capacity, no liability exists even if the judicial action "was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). "[F]undamentally, since absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987). Plaintiff alleges that the judge failed to rule on plaintiff's motion and back-dated his ruling. Any action taken by Judge Ohlig in connection with rendering a decision or acting upon plaintiff's motion is clearly within the judicial capacity of the court. Accordingly, Judge Ohlig is absolutely immune from suit and plaintiff's claims against Judge Ohlig are dismissed.

## C. Deliberate Indifference

Defendants also move to dismiss the claim for "deliberate indifference" to the alleged violations of his constitutional rights. As a threshold matter, any attempt to assert such a claim against the District Attorney, or the Assistant District Attorneys or Judge Ohlig, must be dismissed based on the doctrine of absolute immunity as described *supra*. Similarly, any attempt to bring such a claim against the private actor defendants-Ms. Peterson, the Legal Aid defendants, or court-appointed attorney Bray-must be dismissed for the reasons outlined *supra*.

With respect to the only remaining defendant, County Executive Steve Levy, there is simply no plausible cause of action under Section 1983. To the extent plaintiff is attempting to sue Mr. Levy in his individual capacity, it is beyond cavil that the County Executive cannot be held responsible for the actions of the independently-elected District Attorney's decision to indict and prosecute a defendant. Similarly, to the extent that Mr. Levy is being sued in his official capacity in an attempt to allege some type of municipal liability against the County, that claim must also fail as a matter of law. A district attorney in New York State, when prosecuting a criminal matter, acts in a quasi-judicial manner and represents the State, not the County. Thus, a county cannot establish policy in connection with how a district attorney should prosecute New York State penal laws. Therefore, no municipal liability can arise from the District Attorney's decision to prosecute. In short, plaintiff has failed to articulate any plausible claim for municipal liability given his allegations in the complaint. Accordingly, the claim against the County Executive and any municipal liability claim must be dismissed as a matter of law.

### D. Leave to Replead

Although plaintiff has not requested leave to amend or replead his complaint, the Court has considered whether plaintiff should be given an opportunity to replead. The Second Circuit has emphasized that

> A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated.

*Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (quotations and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile.[6] As discussed in detail *supra*, it is clear from the complaint (as well as plaintiff's detailed submissions in opposition to the motion) that he does not have any possibility of asserting a plausible Section 1983 claim. This lawsuit is a blatant and frivolous attempt to sue private actors-such as the key prosecution witness (Ms. Peterson) and his court-appointed criminal defense attorneys-because he believes that they separately contributed to his indictment and conviction, even though such actors clearly do not have Section 1983 liability given the allegations in plaintiff's complaint. *See, e.g., Contes v. City of New York,* No. 99 Civ. 1597(SAS), 1999 WL 500140, at *11 (S.D.N.Y. July 14, 1999) ("It would be futile to grant leave to replead in this case. Without state action, which is lacking here, [plaintiff] cannot prevail on a claim pursuant to § 1983."). Similarly, plaintiff sues the District Attorney and ADAs even though their alleged wrongful conduct in the grand jury and at trial, which is described in the complaint, is clearly protected by absolute immunity. In essence, plaintiff is primarily seeking to re-litigate issues, via this civil lawsuit, that he unsuccessfully challenged on direct appeal in seeking to have his conviction overturned against parties who have no Section 1983 liability even if the facts alleged in his complaint are true. After carefully reviewing all of plaintiff's submissions, it is abundantly clear that no amendments can cure these pleading deficiencies and any attempt to replead would be futile. *See Cuoco,* 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied").

6     In reaching this determination, the Court has reviewed all of the plaintiff's submissions, including the documents that he attached to his

opposition, all of which confirm the futility of any amendment as to the proposed federal claims.

## III. CONCLUSION

 **\*16** For the foregoing reasons, defendants' motions to dismiss plaintiff's claims are GRANTED in their entirety. The Clerk of the Court shall enter judgment accordingly and close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4394681

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01468-BKS-MJK    Document 12    Filed 01/06/25    Page 40 of 45
Benjamin v. Branden, Not Reported in Fed. Supp. (2022)

2022 WL 1092681

2022 WL 1092681
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Neal BENJAMIN, Plaintiff,

v.

James M. BRANDEN, Esq., Defendant.

21-CV-4927 (LDH) (CLP)
|
Signed 04/12/2022

**Attorneys and Law Firms**

Neal Benjamin, White Deer, PA, Pro Se.

James M. Branden, Law Office of James M. Branden, Staten Island, NY, for Defendant.

**MEMORANDUM & ORDER**

BRIAN M. COGAN, United States District Judge:

**\*1** Plaintiff Neal Benjamin, currently incarcerated at Allenwood Low Federal Correctional Institution in White Deer, Pennsylvania, brings this *pro se* action for damages under 42 U.S.C. § 1983 [1] against an attorney who represented him in an appellate proceeding before the United States Court of Appeals for the Second Circuit. Plaintiff's request to proceed *in forma pauperis* is granted pursuant to 28 U.S.C. § 1915. For the following reasons, the action is dismissed.

[1]    Plaintiff filed a complaint on August 25, 2021, a "Civil Action for Deprivation of Rights pursuant to 42 U.S.C. § 1983," and an amended complaint. The latter two documents repeat the allegations of his complaint.

BACKGROUND

Plaintiff was convicted of several drug crimes following a jury trial in the United States District Court for the Western District of New York, *United States v. Benjamin*, No. 97-cr-133-2 (W.D.N.Y., filed June 30, 1997, closed Jan. 23, 2009). Plaintiff is currently serving a thirty-year sentence for that conviction. *See United States v. Benjamin*, 391 F. App'x 942, 948 (2d Cir. 2010). In 2019, in the United States District

Court for the Western District of New York, plaintiff filed, and was denied, a motion to reduce his sentence pursuant to 18 U.S.C. § 3582 and the First Act of 2018. *See United States v. Benjamin*, No. 97-cr-133-2 (W.D.N.Y.), ECF Nos. 927, 939. He appealed the denial of his motion to reduce his sentence to the Second Circuit; that appeal is pending. *United States v. Benjamin*, No. 19-3636-cr (2d Cir. filed Nov. 1, 2019).

Here, plaintiff is suing the attorney who previously represented [2] him on that appeal, James Branden ("Branden"), who is located in Staten Island, New York, and a member of the Second Circuit's Criminal Justice Act ("CJA") Panel, alleging that Branden was "derelict in his constitutional duties under the Sixth (6 $^{th}$ ) Amendment for his failure to pursue relief that would have been afforded to [plaintiff]." Specifically, plaintiff alleges that Branden failed to heed information that plaintiff emailed to him regarding the Second Circuit's 2010 decision, *United States v. Benjamin*, 391 F. App'x 942, "that places my conviction under 'covered offense' as defined by Section 404 of the First Step Act" and that Branden filed "two (2) adverse petitions," a motion to withdraw the merits brief filed on March 19, 2021 and a motion to dismiss the appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967).

[2]    Plaintiff is currently represented by another CJA attorney. *See United States v. Benjamin*, No. 19-3636-CR, ECF No. 102 (Order Relieving James M. Branden as Appellate Counsel to Benjamin).

DISCUSSION

**I. Standard of Review**

Under 28 U.S.C. Section 1915 (e)(2)(B), "[n]otwithstanding any filing fee, or any portion thereof that may have been paid," [3] a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

[3]    Plaintiff has paid the filing fee.

**\*2** The Court construes plaintiff's *pro se* pleadings liberally particularly because they allege civil rights violations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008). Courts must read *pro se* complaints with "special solicitude"

2022 WL 1092681

and interpret them to raise the "strongest arguments that they suggest," *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-76 (2d Cir. 2006) (internal quotation marks omitted). However, a complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quotations and citations omitted). Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s] devoid of 'further factual enhancement.' " *Id.* (quotations omitted).

## II. Violation of Civil Rights: Improper Defendant

Plaintiff brings this lawsuit against his attorney pursuant to 42 U.S.C. § 1983. Compl. at 1. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (citing 42 U.S.C. § 1983). "Thus, to state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was 'committed by a person acting under the color of state law.' " *Harrison v. New York*, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

"[T]he law is clear that an attorney appointed pursuant to the CJA who performs 'a lawyer's traditional functions as counsel to a defendant in a criminal proceeding" is not a state actor. *Jiau v. Hendon*, No. 12 CIV. 7335, 2014 WL 559004, at *8 (S.D.N.Y. Feb. 12, 2014) quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding") and citing *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997) ("it is well-established that

court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983"); *Cooper v. Barnet*, No. 15-CV-1498, 2015 WL 4619993, at *3 (E.D.N.Y. July 30, 2015) (whether defense counsel was privately retained or was appointed by the Court to defend plaintiff in the underlying criminal case is "immaterial because attorneys generally do not act under color of state law."). Additionally, plaintiff has not alleged that defendant acted jointly with a state actor or conspired with a state actor to deprive plaintiff of some constitutional right. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (private actors may be considered to be acting under the color of state law for purposes of § 1983 if the private actor was a " 'willful participant in joint activity with the State or its agents.' "). Because plaintiff has failed to plausibly allege that defendant acted under color of state law, the complaint fails to state a claim for relief against him under § 1983 and is therefore dismissed. 28 U.S.C. § 1915(e)(2)(b)(ii).

## CONCLUSION

Accordingly, plaintiff's § 1983 action is dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Defendant's motion to dismiss is denied as moot.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

 **\*3**  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2022 WL 1092681

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01468-BKS-MJK    Document 12    Filed 01/06/25    Page 42 of 45

Brooks v. New York State Supreme Court, Appellate Div...., Not Reported in...

2002 WL 31528632

2002 WL 31528632
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Trevor L. BROOKS, Plaintiff,

v.

THE NEW YORK STATE SUPREME COURT,
APPELLATE DIVISION FIRST DEPT.; the Disciplinary
Committee, First Dept.; Thomas J. Cahill Chief Counsel
and Raymond Vallejo Attorney for Disciplinary
Committee; Michael Ross, Attorney at Law, Defendants.

No. 02–CV–4183 (RR).
|
Aug. 16, 2002.

**Synopsis**

Disbarred attorney brought § 1983 action against court, disciplinary committee and various attorneys, alleging racial discrimination. The District Court, Raggi, J., held that: (1) court and committee were entitled to absolute immunity; (2) plaintiff's attorney was not state actor; and (3) *Younger* abstention was warranted.

Dismissed.

West Headnotes (4)

**[1]    Civil Rights** 🔑 States and territories and their agencies and instrumentalities, in general

State court is not "person" subject to suit under § 1983. 42 U.S.C.A. § 1983.

9 Cases that cite this headnote

**[2]    Civil Rights** 🔑 Judges, courts, and judicial officers

State court and disciplinary committee were absolutely immune from § 1983 liability for their conduct in disciplinary proceeding, absent allegation that any non-judicial actions were taken, or that there was complete absence of all jurisdiction. 42 U.S.C.A. § 1983.

7 Cases that cite this headnote

**[3]    Civil Rights** 🔑 Attorneys and witnesses

Private counsel retained to represent attorney in disciplinary proceeding was not state actor, and thus could not be held liable to attorney under § 1983. 42 U.S.C.A. § 1983.

11 Cases that cite this headnote

**[4]    Federal Courts** 🔑 Professional or other services;  malpractice

*Younger* abstention was warranted in attorney's § 1983 action against participants in on-going state disciplinary proceedings. 42 U.S.C.A. § 1983.

MEMORANDUM AND ORDER

RAGGI, J.

**\*1** Plaintiff Trevor L. Brooks, a disbarred attorney proceeding pro se, sues defendants the New York State Supreme Court, Appellate Division First Department ("First Department"), the court's Disciplinary Committee, the Committee's Chief Counsel Thomas J. Cahill, a Committee Attorney Raymond Vallejo, and his own retained counsel Michael Ross, [1] pursuant to 42 U.S.C. §§ 1983 and 1985 for racial discrimination in connection with his disbarment. Plaintiff demands compensatory damages and an injunction ordering his reinstatement to the New York bar.

[1]    The Court notes that it has received a letter written on behalf of an attorney named Michael Jay Ross. The letter explains that plaintiff's complaint was served on Michael Jay Ross in error and that Michael Jay Ross is a different person from the Michael Ross named in the complaint. According to the letter, a copy of the summons and complaint has been forwarded to the correct defendant. Since this case is being dismissed in its entirety, the Court will take no further action regarding the error in service.

Brooks v. New York State Supreme Court, Appellate Div...., Not Reported in...

Case 5:24-cv-01468-BKS-MJK    Document 12    Filed 01/06/25    Page 43 of 45

2002 WL 31528632

Brooks was admitted to practice law in the State of New York by defendant First Department in 1976. According to Brooks's Complaint, in 1996, he decided to relocate to Jamaica and requested from the First Department a two-year leave of absence and/or permission to resign from the practice of law. Apparently, at that time, two disciplinary complaints were outstanding against Brooks. The First Department's decision to pursue these complaints, as well as several others filed against Brooks after he relocated to Jamaica, are at issue in this case.

I. *Sua Sponte Dismissal*

28 U.S.C. § 1915(e)(2) provides that the court shall dismiss a case where it determines that the action is frivolous, or fails to state a claim on which relief may be granted. A complaint "is frivolous where it lacks an arguable basis either in law or in fact"; i.e., where it is "based on an indisputably meritless legal theory" or presents "factual contentions [which] are clearly baseless." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see Alaji Salahuddin v. Alaji,* 232 F.3d 305, 306–7 (2d Cir.2000); *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990). Where, as here, the court "can rule out any possibility, however unlikely it might be, that an amended complaint could succeed in stating a claim," dismissal is appropriate. *Gomez v. USAA Fed. Sav. Bank.,* 171 F.3d 794, 796 (2d Cir.1999); *see also Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (holding that a district court may dismiss a frivolous claim *sua sponte* even when the plaintiff has paid the required filing fee). Thus, because Brooks has failed to provide a sound legal basis for his claim, this court hereby dismisses his action *sua sponte.*

II. *Claims Against the Court and Disciplinary Committee*

[1] "Neither a state nor its officials acting in their official capacities are persons under § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Section 1983 does not provide a federal forum for litigants who seek a remedy against the State for alleged deprivations of civil liberties, as the Eleventh Amendment bars such suits. *Id.* at 66. The state court is thus not subject to suit under § 1983, rendering Plaintiff's claim meritless. *See Zuckerman v. Appellate Div.,* 421 F.2d 625, 626 (2d Cir.1970) (state court is part of "judicial arm of the state of New York" and thus not subject to suit under § 1983).

*2 [2] Additionally, a state court and, by extension, its members, are immune from a suit for damages for their judicial acts performed in their judicial capacities. *See Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 734, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Defendants are alleged to have initiated and conducted disciplinary proceedings against plaintiff in a discriminatory manner in violation of 42 U.S.C. § 1985. These proceedings resulted in the recommended disbarment of plaintiff and said recommendation was confirmed by the New York State Supreme Court, Appellate Division, First Department.

The absolute judicial immunity of the court and its members "is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." *Mireles,* 502 U.S. at 11, 13 (quotation omitted). The only way that this immunity can be overcome is if the court is alleged to have taken nonjudicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." *Id.* at 11–12.

"State bar disciplinary hearings ... constitute ... state judicial proceedings." *Whitely v. Comsat Corp.,* No. 00 Civ. 9401(WHP), 2001 WL 1135946, at *4 (S.D.N.Y. Sept.25, 2001) (citing *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 433—434, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). In New York, in the matter of attorney disciplinary proceedings, the Appellate Division has exclusive jurisdiction. *Paladin v. Finnerty,* No. 92 CV 2792(JG), 1996 WL 1088915, at *2 (E.D.N.Y. Mar.28, 1996) (citing N.Y. Judiciary Law §§ 90(1)—(2)), *aff'd,* 104 F.3d 356 (2d Cir.1996). State bar disciplinary proceedings have been found to be "clearly judicial in nature," and thus quasi-judicial immunity is available to members of disciplinary committees and panels. *Lipin v. Nat'l Union Fire Ins. Co. of Piitsburgh, PA.,* 202 F.Supp.2d 126, 134–35 (S.D.N.Y.2002) (quoting *Sassower v. Mangano,* 927 F.Supp. 113, 120–21 (S.D.N.Y.1996)); *see also Barbara v. New York Stock Exchange, Inc.,* 99 F.3d 49, 58 (2d Cir.1996) (noting that courts of appeals have extended absolute immunity to members of bar association disciplinary committees).

Plaintiff has not alleged that any of the defendants have taken nonjudicial actions or that the actions taken were done in the absence of all jurisdiction. Indeed, initiating a disciplinary proceeding and confirming a recommendation by the hearing Referee and Hearing Panel is well within the jurisdiction of the defendants. Therefore, plaintiff's first cause of action

Case 5:24-cv-01468-BKS-MJK   Document 12   Filed 01/06/25   Page 44 of 45

Brooks v. New York State Supreme Court, Appellate Div...., Not Reported in...

2002 WL 31528632

seeking damages is dismissed as against the state court, the Disciplinary Committee, and defendants Cahill and Vallejo.

The Court's inquiry does not end there however, for plaintiff also seeks injunctive relief in the form of reinstatement to the practice of law or a hearing regarding the alleged violations. Plaintiff cites *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), as authority which allows a state court to be sued for declaratory or injunctive relief under section 1983 for acts performed in its enforcement capacity. Subsequent to this decision, the Supreme Court extended this doctrine in *Pulliam v. Allen,* 466 U.S. 522, 541–42, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), and ruled that prospective injunctive relief could be granted against a judicial officer acting in his or her judicial capacity. However, in 1996 Congress enacted the Federal Courts Improvement Act of 1996 ("FCIA"), Pub.L. No. 104–317, 110 Stat. 3847 (1996) (amending 42 U.S.C. § 1983), which effectively reversed the Court's ruling in *Pulliam.* Section 309(c) of the FCIA bars injunctive relief in any section 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." Therefore, plaintiff's claim for injunctive relief is also dismissed.

### III. *Plaintiff's Claim against his Attorney*

 **\*3**  Plaintiff has also filed a claim against his former attorney, defendant Michael Ross, under 42 U.S.C. § 1983. His allegations against defendant Ross, however, consist of allegations of professional misconduct rather than constitutional violations. A claim for relief under § 1983 must allege "the deprivation of a right secured by the Constitution or laws of the United States ... which has taken place under color of state law." *Rodriguez v. Weprin,* 116 F.3d 62, 65 (2d Cir.1997). There are no such allegations here.

 **[3]**  Even if Plaintiff had alleged constitutional violations on the part of defendant Ross, such claims would fail to state a claim under § 1983 because a lawyer is generally not considered to be "a state actor 'under color of state law' within the meaning of § 1983." *Polk County v. Dodson,* 454 U.S. 312, 318, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (recognizing the general consensus among the Courts of Appeals); *see generally Cammer v. United States,* 350 U.S. 399, 405, 76 S.Ct. 456, 100 L.Ed. 474 (1956) ("The word 'officer' as it has always been applied to lawyers conveys quite a different meaning from the word 'officer' as applied to people serving as officers within the conventional meaning of that term.").

It is well settled that public defenders, *Polk County,* 454 U.S. at 325, and court-appointed attorneys, *Rodriguez,* 116 F.3d at 65, do not act under color of state law when representing criminal defendants. The role of a privately retained attorney is even more remote to the state than that of public defenders and court-appointed attorneys in that he has an obligation to advance the undivided interests of his client, *see Polk County,* 454 U.S. at 318–319, and his license to practice law does not place him "so close to the core of the political process as to make him a formulator of government policy." *In re Griffiths,* 413 U.S. 717, 729, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). Consequently, a privately retained attorney does not act under color of state law within the meaning of § 1983 when representing a client in a civil matter. Accordingly, the Court finds that defendant Ross did not act under color of state law and cannot be held liable under section 1983.

Section 1983 "was enacted to redress civil rights violations by persons acting under color of State law" and should not be used by clients disappointed with the performance of their attorneys. *Mitchell v. Cohen,* No. 90 CV 1836(TCP), 1990 WL 100254, at \*1 (E.D.N.Y. Jun.13, 1990). Complaints about the behavior or performance of an attorney should be addressed to the Grievance Committee of the appropriate State Appellate Division. *Id.*

### IV. *Younger Abstention*

 **[4]**  Furthermore, even if plaintiff were not barred for the reasons noted above, this Court would have to abstain from considering this case pursuant to *Younger v. Harris,* 401 U.S. 37 (1971), which holds that federal courts should refrain from interfering with pending state judicial proceedings except under special circumstances. "Where vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.' " *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (quoting *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979)). The State of New York obviously has an important interest in regulating the conduct of attorneys licensed by the state and the New York courts are "competent to consider and determine federal constitutional questions." *Hayes v. State of New York,* No. 01–CV–0545E (SR), 2001 WL 1388325, at \*3–4 (W.D.N.Y. Nov.1, 2001). Here, plaintiff notes that he has appealed his disbarment to the New York State Court of Appeals and expects a ruling sometime in August 2002. The *Younger* doctrine is not only applicable to any ongoing attorney disciplinary proceeding,

Case 5:24-cv-01468-BKS-MJK    Document 12    Filed 01/06/25    Page 45 of 45

Brooks v. New York State Supreme Court, Appellate Div...., Not Reported in...

2002 WL 31528632

*id.* at 3, but it is also applicable to the pending appeal in state court. *See Davidson v. Garry,* 956 F.Supp. 265, 269 n. 2 (E.D.N.Y.1996) (Bartels, J.) (citing *New Orleans Public Service, Inc. v. Council of New Orleans,* 491 U.S. 350, 368, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) in extending the *Younger* principles to state civil proceedings), *aff'd,* 112 F.3d 503 (2d Cir.1997)). "[W]hen *Younger* abstention is applicable, abstention is mandatory." *Hayes,* 2001 WL 1388325 at *3 (citing *Schlagler v. Phillips,* 166 F.3d 439, 441 (2d Cir.1999)).

V. *Conclusion*

 **\*4**  For all of the above stated reasons, plaintiff's complaint is dismissed and his request for a preliminary injunction is denied.

*SO ORDERED.*

CIVIL JUDGMENT

Pursuant to the order issued *August 16, 2002* by the Honorable Reena Raggi, dismissing the complaint and denying the request for a preliminary injunction, it is
ORDERED, ADJUDGED AND DECREED: That the complaint is hereby dismissed and the request for a preliminary injunction is hereby denied.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 31528632

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.